INTERSTATE BRANDS CORPORATION; Merita Bread Bakery Division, Plaintiffs–Counter–Defendants–Appellants,

v.

LOCAL 441 RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL–CIO, Defendant–Counter–Claimant–Appellee.

No. 94–6306.

United States Court of Appeals, Eleventh Circuit.

Dec. 14, 1994.

C.V. Stelzenmuller, Dent M. Morton, Birmingham, AL, for appellants.

Alan E. Seneczko, Milwaukee, WI, for amicus curiae The American Assoc. of Medical Review Officers.

George C. Longshore, Birmingham, AL, for appellee.

Robert D. Kamenshine, Robert V. Zener, Leonard Schaitman, Dept. of Justice, Appellate Staff, Washington, DC, for amicus curiae Dept. of Transp.

Before BLACK and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

In this case, we review the district court's grant of summary judgment to appellee ("the Union") and enforcement of an arbitration award ordering appellant ("Merita") to reinstate unconditionally a truck driver who had tested positive for drugs. Merita argues that the arbitration award incorrectly interprets the Department of Transportation regulations regarding chain of custody requirements for the drug tests. We agree, reverse the district court's judgment, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Merita is a bakery in Birmingham, Alabama which ships substantial quantities of bakery products directly to customers in Mississippi, Tennessee, and Georgia. The Union represents employees of the bakery, including the truck drivers who deliver the bakery goods. Merita employed Willard Hamrick as an interstate truck driver subject to all the rules and regulations of the Department of Transportation ("DOT"), binding upon the labor contract between Merita and the Union.

In May of 1993, Hamrick was informed by his supervisor that he was due for a biennial physical examination which included DOT mandated drug-testing. At the appointed time, Hamrick presented himself for the physical and drug testing. The collector who took the urine specimen filled out the prescribed DOT Control and Custody Form, and Hamrick signed the form on the blank acknowledging that it was his specimen.

Hamrick put his initials on the adhesive, tamper-proof bottle seal which the collector signed and dated. The collector peeled the seal off the top copy of the DOT form and placed it over the specimen bottle cap, with the label parts running down opposite sides of the bottle. She placed the bottle in a plastic bag which has an adhesive edge exposed by peeling off a paper strip, and a plastic pocket for the Control and Custody Form.

After the collector completed and signed the entries certifying that she collected the specimen and prepared it for shipment in accordance with the DOT regulations, including its release by her to the courier for shipment to the laboratory, she peeled the adhesive box seal off the top copy of the DOT form, folded up five [1] copies of the form and inserted them in the pocket of the plastic bag into which she had placed the specimen bottle. She removed the paper strip from the plastic bag and pressed the bag's adhesive surface against the other side of the opening so that the bag could not be opened without cutting or tearing it. She placed the bag containing the bottle and five copies of the Control and Custody Form into the shipping box, sealed the edge of the box, signed the seal, dated it, and placed the box on a shelf in her immediate working area—a laboratory from which members of the public are excluded—to await pickup by the courier. The bottle seal, the box seal, and each of the seven copies of this carbonless manifold Control and Custody Form have printed on them a unique specimen number. There is no dispute that DOT regulations require all of these actions, and that they were performed.

The Federal Express courier picked the box up at his regular time that day. He did not sign the Control and Custody Form because it was sealed inside the bag containing the specimen which was sealed inside the shipping box.

---

**1.** She gave one copy of the form to Hamrick, and kept another for her files.

The box arrived the next day at the testing laboratory with all seals intact, and without any evidence of tampering. The next entry on the Control and Custody Form shows its receipt by the laboratory for "testing." Section 40.29(a)(1) requires that:

> When a shipment of specimens is received, laboratory personnel shall inspect each package for evidence of possible tampering and compare information on specimen bottles within each package to the information on the accompanying chain of custody forms. Any direct evidence of tampering or discrepancies in the information on specimen bottles and the employer's chain of custody forms attached to the shipment shall be immediately reported to the employer and shall be noted on the laboratory's chain of custody form which shall accompany the specimen while they are in the laboratory's possession.

There was no suggestion that anyone had tampered with Hamrick's specimen.

## II. *THE AWARD*

Although the arbitrator framed the issue in terms of "the reasonable rights of the employees" as expressed in the contract, he immediately went on to state the issue "more specifically" as "... whether the urine test ... meets the criteria of the Department of Transportation standards and, if so, whether the penalty of discharge is appropriate under the Company drug policy?"

The arbitrator did not find any fault with the collection site or the laboratory procedures.[2] He held that DOT regulation 40.25(c) requires a chain of custody in the handling of a specimen, and that there was a break in the chain in this case. He based this conclusion on the failure of the collector to note on the Control and Custody Form that she put the box in "storage" when she placed the box on her out-box shelf, and because the Control and Custody Form did not identify nor have the signature of the courier who picked it up, nor of the individuals who handled the box between the collec-

tion site and the testing laboratory. He wrote:

> ... [T]he chain of custody form contains no reference to storage. The form purports to show that the donor released the sample to the collector who released it to an unidentified courier but without a reference to storage. A second unidentified courier picked up the sample in Milwaukee for transport to the lab where it was received by [the lab technician]....

The above shows that there is a break in the links of the chain of [custody] *sic.* between the collector, the couriers, and [the laboratory technician]. The chain of custody form is designed "for maintaining control and accountability of each specimen from the point of collection to final disposition of the specimen. The date and purpose shall be documented on the form each time a specimen is handled or transferred and *every individual in the chain* shall be identified. Every effort shall be made to minimize the number of persons handling specimens." (Emphasis supplied) § 40.26(k).

The arbitrator concluded that "[t]he errors shown on the face of the Custody Form here have the cumulative weight of voiding the specimen," and he excluded it from the arbitration.

## III. *THE STANDARD OF REVIEW*

Our review of an arbitration award is very limited. As reiterated in *United States Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 36–37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987):

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's

---

**2.** The arbitrator specifically found the collection site procedures were neither sloppy nor haphazard as the Union had alleged. He also found the collection site personnel to be "adequately trained."

judgment, when it was his judgment and all that it connotes that was bargained for." (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)).

■ We do not reconsider the merits of the award if it is argued that the award rests on errors of fact or on a misinterpretation of the contract.

> To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.

*Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71.

■ Nonetheless, the deference due the arbitrator's award does not include blanket approval of all arbitration awards. Where the award does not draw its essence from the contract, but rather reflects the arbitrator's "own brand of industrial justice," the reviewing court need not defer to the arbitrator's conclusions. *Misco,* 484 U.S. at 36, 108 S.Ct. at 369 (quoting *Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

■ In this case, the arbitrator went beyond the collective bargaining agreement and undertook to interpret the DOT regulations requiring a "chain of custody" for the specimen. The arbitrator resolved the issue of the admissibility of the drug test without reference to the contract at all. His analysis was confined to the DOT regulations and his interpretation of them. Even the Union concedes that the award was grounded "in the facts and the regulations."

In looking to the regulations, the arbitrator acknowledged that it is DOT, not the contract, which mandates drug testing for interstate truck drivers. It is DOT which has established the protocol for this program. What these procedures require is an issue wholly outside the scope of the collective bargaining agreement. The employee's claim that his test is not admissible is not, on its face, governed by the contract. The award, therefore, does not draw its essence from the contract, and we owe it no special deference.

## IV.  ANALYSIS

■ The issue then is whether the arbitrator is correct that Section 40.25(k) requires the signature of each and every individual who handles the sealed shipping box between the collection site and the testing laboratory before the specimen inside that box is admissible against the employee.

The problem with this interpretation of the regulation is that it is not shared by the DOT. Merita maintains, and there has been no suggestion to the contrary by the Union, that DOT has never interpreted its regulations to require that couriers, postal employees, and other intervening personnel involved in the transportation of urine specimens make chain of custody entries. Merita points out that such entries are impossible to make because the forms upon which they would be made are sealed inside a plastic bag with the specimen which is then sealed inside the shipping box. DOT requires signatures from only those persons who actually handle the specimen itself, rather than merely the sealed shipping box. Persons involved in transporting the box containing the specimen are not considered to be in the chain of custody.

In its amicus curiae brief, DOT states that it has never required a signature from every individual involved in the transportation of specimens because it has regarded the tamper-evident seals on the bottle and shipping box to be the guarantors of the integrity of the specimen. Any tampering with the specimen after collection and before testing would be revealed by the broken seals. Replacement of the seals is not possible given their unique number which corresponds to that on the Custody and Control Form. According to DOT, its consistent interpretation of its regulations has been that the chain of custody documentation is required only at the collection site and at the testing laborato-

ry where the specimens are vulnerable to tampering.

DOT has recently amended Section 40.25(c) to make its requirements clear:

(c) Chain of Custody. The chain of custody block of the drug testing custody and control form shall be properly executed by authorized collection site personnel upon receipt of specimens. Handling and transportation of urine specimens from one authorized individual or place to another shall always be accomplished through chain of custody procedures. *Since specimens and documentation are sealed in shipping containers that would indicate any tampering during transit to the laboratory and couriers, express carriers, and postal service personnel do not have access to the chain of custody forms, there is no requirement that such personnel document chain of custody for the shipping container during transit. Nor is there any requirement that there be a chain of custody entry when a specimen which is sealed in such a shipping container is put into or taken out of secure storage at the collection site prior to pickup by such personnel. This means that the chain of custody is not broken, and a test shall not be canceled, because couriers, express carriers, postal service personnel, or similar persons involved solely with the transportation of a specimen to a laboratory, have not documented their participation in the chain of custody documentation or because the chain of custody does not contain entries related to putting the specimen into or removing it from secure temporary storage at the collection site.* Every effort shall be made to minimize the number of persons handling specimens. (emphasis supplied)

In the accompanying commentary, DOT notes that the previous language of Section 40.25(k) directs that "every individual in the chain" be identified. DOT points out, however, that:

Unlike authorized collection site and laboratory personnel, who actually handle the specimen, intervening transportation personnel are not, properly speaking, "in the chain" at all, a point which the Department

has understood to be consistent with longstanding case law in a variety of contexts. Consequently, the Department never understood or intended this language to require that intervening transportation personnel make chain of custody entries.

Similarly, DOT states that it has never required the notation on the Control and Custody Form of a specimen's placement into secure temporary storage. In fact, once the specimen bottle has been sealed inside the plastic bag, and the bag sealed inside the shipping container, there is no way that such an entry could be made on the Custody and Control Form. Section 40.25(f)(25) requires sealing the specimen inside a shipping box for mailing as the guarantor of its integrity after collection and prior to testing.

We owe substantial deference to an agency's interpretation of its own regulation. *Thomas Jefferson University v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). *See also Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965). "Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.,* (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414–15, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

DOT's construction of its custody and control regulation is reasonable in view of its requirement that the Custody and Control Forms be sealed within the shipping container. In fact, it is difficult to see how DOT's regulations could be construed in any other way without rendering them nonsensical. The regulations' language and structure demonstrate that it applies chain of custody documentation requirements only at the collection site, and at the laboratory. Only at these two places does anyone have access to a urine sample that is not securely sealed. Evidence of tampering with the uniquely

numbered seals after proper sealing of the specimen invalidates the test; not the absence of signatures in transit.[3]

Furthermore, the language requiring the signatures from those in the "chain of custody" must be read in the context of the long-standing case law in a variety of contexts that the mailing of evidence does not, without more, interrupt a chain of custody. *See e.g., Pasadena Research Laboratories v. United States,* 169 F.2d 375, 380–81 (9th Cir.1948), *cert. denied,* 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401 (1948); *Rosedale Coal Co. v. U.S. Bureau of Mines,* 247 F.2d 299 (4th Cir. 1957); *Gallego v. United States,* 276 F.2d 914 (9th Cir.1960).

For the foregoing reasons, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.[4]

REVERSED and REMANDED.

---

**3.** We note DOT's recent clarification of its regulations regarding the chain of custody requirements for specimens temporarily placed in secure storage and then mailed. This should avoid litigation along these lines in the future. We do not rely on these amendments—made after and apparently in response to the arbitration here involved—to reach the conclusion that the arbitrator incorrectly construed the DOT regulations in excluding the drug test from the arbitration.

**4.** Because we hold that the arbitrator misapplied DOT regulations in excluding the positive drug test and the arbitration award must be set aside, we need not address whether the award violates a dominant and well-defined public policy.