45 F.3d 1455
 ARW EXPLORATION CORPORATION, Plaintiff-Appellant,
v.
Cesar V. AGUIRRE; Anastasios Andriopoulos; Charles E.
Bender; B.W. Covington; Chris Dalamangas; P. Elaportas;
George Ioannides; Kyriakos Ioannides; V. Kaltsas;
Christos P. Kartsonis; Demetrious Kartsonis; A. George
Magouliotis; A. Papathanasopolous; Steve Poulos; S.L.
Prabhu; Neal Roth; Dorothy Roychoudhury; S.L. Stogiannis;
G. Vallianos; and Indumathi Ponnapali, as personal
representative of the estate of Ponnapalli Ramakrishna,
Defendants/Third-Party Plaintiffs-Appellees,
v.
Spyridon ARMENIS, also known as Spiro Armenis, Third-Party
Defendant-Appellant.
Cesar V. AGUIRRE; Anastasios Andriopoulos; Charles E.
Bender; B.W. Covington; Chris Dalamangas; P. Elaportas;
George Ioannides; Kyriakos Ioannides; V. Kaltsas;
Christos P. Kartsonis; Demetrious Kartsonis; A. George
Magouliotis; A. Papathanasopolous; Steve Poulos; S.L.
Prabhu; Neal Roth; Dorothy Roychoudhury; S.L. Stogiannis;
G. Vallianos; and Indumathi Ponnapali, as personal
representative of the estate of Ponnapalli Ramakrishna,
Plaintiffs-Appellees,
v.
ARW EXPLORATION CORPORATION and Spyridon Armenis, also known
as Spiro Armenis, Defendants-Appellants.
 No. 94-6023.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 23, 1995.
 
 1
 Jack R. Durland, Jr., Berry & Durland, Oklahoma City, OK, for appellants.
 
 
 2
 Ricki V. Sonders (David R. Widdoes with her, on the brief), Day, Edwards, Federman, Propester & Christiansen, Oklahoma City, OK, for appellees.
 
 
 3
 Before BALDOCK, LOGAN, and BURCIAGA,* Senior District Judge.
 
 
 4
 BURCIAGA, Senior District Judge.
 
 
 5
 Defendants-Appellants ARW Exploration Corporation ("ARW") and Spyridon Armenis ("Armenis") appeal the district court's submission of the parties' disputes to binding arbitration and the district court's subsequent confirmation of the ensuing arbitration award.
 
 
 6
 Plaintiffs-Appellees are twenty individual investors who purchased interests in one or more of six related oil and gas ventures. ARW and Armenis, the sole shareholder and president of ARW, promoted and operated these oil and gas ventures. In September of 1990, Plaintiffs filed a complaint against Defendants with the Florida office of the American Arbitration Association ("AAA"), alleging violations of federal and state securities laws, the Florida Civil Remedies for Criminal Practices Act, common law fraud, and breach of fiduciary duty and contract. On September 28, 1990, ARW filed a complaint in federal district court for the Western District of Oklahoma for a declaration of the arbitrability of Plaintiffs' claims and other related injunctive relief (D.C. No. 90-1598). In response, Plaintiffs moved to compel Defendants to arbitrate all disputes and to compel Armenis specifically to arbitration by way of a third-party complaint. In the meantime, the arbitration proceeding was transferred to Oklahoma City.
 
 
 7
 On January 2, 1991, the district court dismissed ARW's complaint on grounds that a Florida state court had previously issued an order to compel arbitration. ARW appealed from this dismissal order. This Court reversed and remanded for the district court to make its own determination of arbitrability. ARW Exploration Corp. v. Aguirre, 947 F.2d 450, 455 (10th Cir.1991).
 
 
 8
 On March 8, 1991, and while the appeal to the Tenth Circuit was pending, Plaintiffs filed a complaint in the federal district court for the Middle District of Florida against Defendants on the same set of facts as contained in the AAA complaint and seeking the same relief, but without asserting a claim for breach of contract or breach of fiduciary duty and omitting a related defendant, A & W Drilling & Equipment Company. Meanwhile, the Oklahoma district court dismissed Plaintiffs' third-party complaint against Armenis on November 22, 1991. On December 2, 1991, the Florida federal district court transferred Plaintiffs' case to the federal court in Oklahoma, which consolidated the case, D.C. No. 91-1980, with D.C. No. 90-1598 for all purposes on February 3, 1992.
 
 
 9
 After entertaining arguments in the consolidated case, the district court ordered on July 9, 1992 that all claims in the consolidated case were arbitrable against ARW and Armenis. Richard E. Coulsen, an AAA-selected and accredited arbitrator and professor of law, conducted the arbitration proceeding in Oklahoma City. On January 28, 1993, the arbitrator designated April 5, 1993 as the first day of the arbitration proceeding. The arbitrator confirmed this date on February 16, 1993. On March 26, 1993, the arbitrator gave notice of the time and place of a pre-hearing conference, to take place on April 1, 1993.
 
 
 10
 On the day of this conference, Defendants' counsel transmitted by facsimile a motion to the arbitrator seeking leave to withdraw as counsel and a 60-day continuance of the hearing. Defense counsel stated that counsel needed more time to prepare for the hearing because counsel could not contact Armenis as he was "traveling overseas." Counsel gave no other reason or explanation. The arbitrator denied both requests at the pre-hearing conference and so notified defense counsel.
 
 
 11
 Neither Defendants nor defense counsel attended the pre-hearing conference or the arbitration hearing. The arbitrator received Plaintiffs' evidence for several days. On May 14, 1993, the arbitrator issued an award for Plaintiffs. On May 25, 1993, Plaintiffs moved for confirmation of the award in the district court and Defendants objected. On December 10, 1993, the district court confirmed the award over Defendants' objections, denied Defendants' motion to vacate or modify the award, and entered judgment on December 13, 1993.
 
 
 12
 Five of the six joint venture agreements between the parties contained an identical arbitration clause:
 
 
 13
 If during the course of the venture, the parties are unable to agree on any matter with respect to which a decision must be made; or if on termination, no satisfactory arrangement can be made for settlement of each party's interest in the venture, the dispute or disputes shall be subject to binding arbitration. Any matter in dispute which is not provided for in this agreement or in the Joint Operating Agreement shall be settled by arbitration, in accordance with the rules of the American Arbitration Association. The arbitration decision will be final and binding upon the parties.
 
 
 14
 One joint venture agreement, however, contained no arbitration clause: the "IFA" Agreement. Defendant Armenis signed all joint venture agreements in his capacity as president of ARW and also signed the IFA Agreement in his individual capacity.
 
 
 15
 Defendants filed the present appeal and allege numerous reversible errors. First, Armenis contends the district court should have dismissed this action against him in his individual capacity because Plaintiffs did not serve process upon him until 220 days after Plaintiffs filed their complaint in the Florida action. Alternatively, Armenis asserts that even if Plaintiffs had good cause for an extension of time in which to serve process, Armenis was immune from service at the time in question. Second, Armenis argues the district court should not have subjected him to arbitration in his individual capacity without first piercing the ARW corporate veil or determining whether ARW was his alter ego under traditional principles of corporate law. Third, Defendants posit that the district court erred in consolidating all six joint venture agreements into a single arbitration proceeding. Fourth, Defendants contend the district court should not have submitted the IFA Agreement to binding arbitration because that agreement had no arbitration clause. Fifth, Defendants argue the arbitrator exceeded his authority because he erroneously (1) determined that the applicable statutes of limitations did not bar Plaintiffs' claims; (2) failed to require Plaintiffs to return the securities at issue to Defendants; (3) awarded damages to investors without deducting income Plaintiffs received; and (4) determined that the ventures were "securities" within the meaning of the federal securities laws. Finally, Defendants contend the arbitrator abused his discretion in refusing to continue the arbitration hearing and in refusing to provide notice of the hearing date to not only defense counsel, but also to Defendants personally.
 
 
 16
 This Court has jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291. We affirm in part, reverse in part, and remand.
 
 I.
 
 17
 We first address whether the district court erred in failing to rule on Armenis' motion to dismiss on grounds that service occurred 220 days after Plaintiffs filed their complaint. Armenis filed a motion to dismiss on November 4, 1991 on grounds of defective service. Specifically, Armenis argued to the district court that service in the Florida case was defective because it occurred 100 days after the 120-day deadline specified in then-applicable[1] Fed.R.Civ.P. 4(j):
 
 
 18
 If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice....
 
 
 19
 The district court did not address Armenis' objection to service in its July 9, 1992 order compelling Armenis and ARW to binding arbitration. In fact, the district court did not rule on the motion to dismiss at all until the December 10, 1993 order confirming the arbitrator's award--and even then, the district court only disposed of the contention of whether Armenis was immune from service in Florida at the time he was served (addressed in the next section, infra ). At no time did the district court make any findings concerning whether Plaintiffs had good cause for extending the 120-day deadline.
 
 
 20
 Plaintiffs argue that the district court impliedly denied the motion to dismiss on grounds of untimely service because Plaintiffs had good cause; specifically, Plaintiffs claim that Armenis was deliberately evading service in Florida, and point to affidavits and other documentary evidence to that effect. However, nothing in the record demonstrates that the district court even considered Plaintiffs' contentions. Plaintiffs readily admit that "the district court never issued an order specifically addressing Armenis' motion to dismiss on the grounds of untimely service," Appellees' Answer Brief at 14, but assert that the district court had Armenis' motion and Plaintiffs' response before it, and when the district court granted the motion to compel arbitration, it necessarily denied the motion. This post hoc conclusion fails, however, because the district court, in its July 9, 1992 order compelling arbitration, mistakenly believed that "Armenis join[ed] the investors in their motion to compel arbitration...." Order at 1, 1992 WL 235875 (W.D.Okla. July 9, 1992).
 
 
 21
 We review a district court's determination under Fed.R.Civ.P. 4(j) for abuse of discretion. Jones v. Frank, 973 F.2d 872, 872 (10th Cir.1992). A district court that does not exercise its discretion, or makes a decision without providing reasons, abuses that discretion.
 
 
 22
 Of course, the grant or denial of an opportunity to amend [the complaint] is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of discretion and inconsistent with the spirit of the Federal Rules.
 
 
 23
 Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). See also FMC Corp. v. Varonos, 892 F.2d 1308, 1316 (7th Cir.1990) ("A trial court may abuse its discretion by failing to exercise its discretion," citing cases in other contexts). Without anything in the record to indicate how the district court made its determination with respect to the good cause exception--assuming it did--appellate review is impossible. Consequently, the Court remands the issue to the district court for a determination of whether Plaintiffs had good cause for extending the 120-day deadline for service of process upon Armenis in the Florida action.
 
 II.
 
 24
 The next issue for our consideration is whether the district court erred in concluding that Armenis was not immune from service of process at the time Plaintiffs served him. Plaintiffs served Armenis in the 1991 Florida federal court action while he was attending a deposition in the AAA proceeding. In its order confirming the arbitrator's award, the district court ruled that Armenis enjoyed no immunity from service of process because the Florida court action for which Plaintiffs served him arose out of or involved the same subject matter as the AAA arbitration and deposition he was voluntarily attending.
 
 
 25
 The Supreme Court explained the rationale of the doctrine of process immunity in Stewart v. Ramsay, 242 U.S. 128, 130, 37 S.Ct. 44, 46, 61 L.Ed. 192 (1916):
 
 
 26
 It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify.
 
 
 27
 However, process immunity is not for the convenience of the person seeking it, "but is for the convenience of the court and should be made available only to further the administration of justice." 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 1076 at 500 (1987). Immunity does not attach "where the later action, in which the immunity from service is claimed, arises out of or involves the same subject matter as the one in which the nonresident has voluntarily attended." Walker v. Calada Materials Co., 309 F.2d 74, 76 (10th Cir.1962). See also 4 Wright & Miller, supra Sec. 1080 at 511 ("There is generally no immunity from service of process when the suit in which immunity is sought is part of, or a continuation of, the suit for which the person claiming immunity is in the jurisdiction." (citing cases)). The Florida action and the AAA arbitration involve the same facts and most of the same allegations. Although Plaintiffs did not bring breach of fiduciary duty or breach of contract claims in the Florida case, and did not name a related defendant named in the arbitration, these differences are too minor to be of consequence.
 
 
 28
 Armenis argues that Florida law should apply, not federal law, and that Florida's immunity from service rules are more strict with respect to the related action exception. Plaintiffs argue Florida law compels the same result. Whether Florida law is more helpful to Defendants' position, however, is immaterial because federal law applies. Immunity from service is a procedural, not a substantive, rule; therefore, the admonition of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to utilize the substantive law of the forum state, has no application. Marlowe v. Baird, 301 F.2d 169, 170 (6th Cir.1962); Pointer v. Ghavam, 107 F.R.D. 262, 264 (E.D.Ark.1985) (citing cases).
 
 III.
 
 29
 Next, we address whether the district court made a sufficient finding that Armenis was subject to arbitration in his individual capacity. Armenis signed five of the six joint venture agreements only in his capacity as president of ARW. Armenis signed the IFA Agreement in his individual capacity, but the IFA Agreement does not have an arbitration clause. Armenis asserts that before he can be compelled to arbitrate, the district court should have pierced the ARW corporate veil or found that ARW was the alter ego of Armenis. We agree.
 
 
 30
 A court must initially evaluate whether an individual is bound by a contractual duty to arbitrate before compelling arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), quoting Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960). See also Oil, Chem. & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co., 528 F.2d 252, 254 (10th Cir.1976) ("The issue of arbitrability is for judicial determination because no party has to arbitrate a dispute unless it has consented thereto."). The district court's arbitrability determination includes ascertaining whether a duty to arbitrate exists upon a finding of alter ego. International Ass'n of Heat & Frost Insulators, Local Union 42 v. Absolute Envtl. Serv., Inc., 814 F.Supp. 392, 403 (D.Del.1993). A basic proposition of corporate law is that a corporation ordinarily will be treated as a legal entity separate from its shareholders. Frank v. U.S. West, Inc., 3 F.3d 1357, 1362 (10th Cir.1993). That Armenis is the sole shareholder of ARW is generally insufficient in itself to warrant disregarding separate corporate existence. Quarles v. Fuqua Indus., Inc., 504 F.2d 1358, 1362-64 (10th Cir.1974). Courts do not lightly pierce the corporate veil, "even in deference to the strong policy favoring arbitration." Califano v. Shearson Lehman Bros. Inc., 690 F.Supp. 1354, 1355 (S.D.N.Y.1988). The district court must determine whether a corporation contractually bound to arbitrate is the alter ego, under applicable principles of corporate law, of a shareholder before subjecting that shareholder to binding arbitration.
 
 
 31
 The district court made no such determination before compelling Armenis to arbitrate--most likely because the court was under the mistaken impression that Armenis had no objections to compulsory arbitration. Armenis, however, had this objection pending at the time the court ordered arbitration. The district court finally addressed this issue in its confirmation order, but essentially, the district court adopted the arbitrator's factual findings concerning Armenis' use of ARW as his alter ego. The arbitrator had concluded that Armenis used ARW in a fraudulent manner and was therefore individually bound to arbitrate. Regarding the arbitrator's conclusion, the district court held, "This court does not have the authority to overturn this finding. See Foster v. Turley, 808 F.2d 38, 42 (10th Cir.1986)."
 
 
 32
 This ruling is error. Foster stands for the proposition that a district court cannot pass on the arbitrator's findings with respect to the substantive merits of the dispute. Id. at 43 ("[T]he court may not ... decide the merits of the controversy."). The arbitrator is without power to determine whether a party is subject to arbitration, however. It is the province of the court, not the arbitrator, to determine whether a party has a duty to arbitrate. AT & T Technologies, 475 U.S. at 649, 106 S.Ct. at 1418-19; American Oil, 528 F.2d at 254.
 
 
 33
 Plaintiffs contend the district court's decision should stand because Armenis is subject to arbitration under a respondeat superior or third-party beneficiary theory. Application of these principles to hold Armenis personally liable for the acts of ARW would render the rule of separate corporate identity a nullity. In any event, even if these theories were applicable, the district court was still required to make a factual determination to this effect.
 
 
 34
 Because the district court never made its own independent finding as to whether Armenis was personally subject to binding arbitration, this issue is remanded to the district court. See American Bell Inc. v. Federation of Tel. Workers, 736 F.2d 879, 887 (3d Cir.1984) (remanding to district court determination of whether corporate veil should be pierced for purposes of subjecting party to arbitration).
 
 IV.
 
 35
 We may handily dispose of Defendants' argument that the district court erred in consolidating the six joint venture agreements for single arbitration. Defendants "admit that the issue of consolidating the six joint venture agreements for arbitration was not raised before the arbitrator or the district court." Appellants' Reply Brief at 13-14. The Court will not consider arguments made for the first time on appeal. Workman v. Jordan, 958 F.2d 332, 337 (10th Cir.1992); R. Eric Peterson Constr. Co. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co.), 951 F.2d 1175, 1182 (10th Cir.1991).
 
 
 36
 Defendants contend that the Court should nevertheless entertain this argument because (1) the matter goes to the Court's jurisdiction; or (2) consolidation is "plain error" and must be corrected to prevent "manifest injustice." Whether consolidation of the joint venture agreements is permissible under the Federal Arbitration Act, 9 U.S.C. Secs. 1-16 (1988), has nothing whatever to do with the Court's jurisdiction. Nor may consolidation of the agreements for arbitration be characterized as plain error.
 
 V.
 
 37
 The next issue for our review is whether the district court erred in submitting disputes relating to the IFA agreement to binding arbitration when that agreement contains no arbitration clause. We find no such error.
 
 
 38
 The district court explained its reasons for subjecting disputes with respect to the IFA Agreement to binding arbitration:
 
 
 39
 While it is true that this agreement did not contain an arbitration clause, the IFA Agreement clearly relates to the on-going oil and gas ventures between the parties. Th[e] arbitration provision[s] contained in the other five joint venture agreements are] clearly broad enough to encompass disputes with respect to the IFA Agreement.
 
 
 40
 Order at 5 (W.D.Okla. Dec. 10, 1993). The five other joint venture agreements provide that all "disputes shall be subject to binding arbitration. Any matter in dispute which is not provided for in this agreement or in the Joint Operating Agreement shall be settled by arbitration...." (emphasis added).
 
 
 41
 The Federal Arbitration Act, 9 U.S.C. Secs. 1-16, evinces a strong federal policy in favor of arbitration. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains the same broad and sweeping language that these clauses possess. AT & T Technologies, 475 U.S. at 650, 106 S.Ct. at 1419. This presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. All doubts should be resolved in favor of coverage. Id. Courts are to "rigorously" enforce agreements to arbitrate. McMahon, 482 U.S. at 226, 107 S.Ct. at 2337. Moreover, the agreement to arbitrate need not be in a single document or writing. Midland Tar Distillers v. M/T Lotos, 362 F.Supp. 1311, 1313 (S.D.N.Y.1973).
 
 
 42
 Although the IFA Agreement contains no arbitration clause, the five joint venture agreements do contain such a clause. These clauses expressly extend the duty to arbitrate to "[a]ny matter in dispute which is not provided for in this agreement or in the Joint Operating Agreement." In the analogous decision of Associated Brick Mason Contractors v. Harrington, 820 F.2d 31 (2d Cir.1987), a labor union argued that its duty to arbitrate under a collective bargaining agreement did not extend to disputes with respect to a separate memorandum of understanding, a document containing no arbitration clause. Id. at 34. After noting the broad arbitration clause in the collective bargaining agreement, however, the Second Circuit refused to reverse the district court's decision that the arbitration clause extended to grievances relating to the separate memorandum. Id. at 35-36.
 
 
 43
 As in Harrington, the district court concluded that the "any matter in dispute" language is broad enough to cover any IFA Agreement disputes. Additionally, Defendants do not contest the district court's finding that the IFA Agreement related to the oil and gas ventures between the parties. The record indicates that no Plaintiff assented to the terms of the IFA Agreement without also executing at least one other joint venture agreement. The arbitration clauses of the other joint venture agreements clearly covered all matters in dispute, including those arising out of the IFA Agreement. Because it cannot be said with "positive assurance" that the arbitration clauses in question are not susceptible of the district court's interpretation, we affirm the district court's ruling in this context.
 
 VI.
 
 44
 Defendants posit numerous errors relating to the merits of the arbitrator's decision. The Federal Arbitration Act authorizes vacation of an arbitrator's award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. Sec. 10(a)(4). This Court owes no deference to the district court's decision to confirm the arbitration award. NCR Corp., E & M-Wichita v. International Ass'n of Machinists & Aerospace Workers Dist. Lodge No. 70, 906 F.2d 1499, 1500 (10th Cir.1990) (court reviews de novo a grant of summary judgment vacating or enforcing an arbitration award). However, maximum deference is owed to the arbitrator's decision. In fact, the standard of review of arbitral awards "is among the narrowest known to the law." Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7, 886 F.2d 275, 276 (10th Cir.1989).
 
 
 45
 Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited.
 
 
 46
 Foster v. Turley, 808 F.2d 38, 42 (10th Cir.1986) (citations omitted).
 
 
 47
 An arbitrator's erroneous interpretations or applications of law are not reversible. Wilko v. Swan, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). Only "manifest disregard" of the law is subject to reversal. Id. This Court has characterized the "manifest disregard" standard as "willful inattentiveness to the governing law." Jenkins v. Prudential-Bache Sec. Inc., 847 F.2d 631, 634 (10th Cir.1988). Manifest disregard of the law "clearly means more than error or misunderstanding with respect to the law." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir.1986). Because of this highly deferential standard of review of an arbitration award, the district court rejected the contentions Defendants raise.
 
 
 48
 Defendants contend the arbitrator's award should be vacated because the arbitrator incorrectly applied New Jersey limitations periods in deciding that certain of the investors' claims were not time-barred. First, the standards discussed above preclude review of this decision. Even erroneous interpretations or applications of law will not be disturbed. Second, Defendants failed to raise this issue below. Failure to raise an argument to the district court in support of vacating, or in opposition to confirmation of, an arbitrator's award precludes raising the argument on appeal. Moseley, Hallgarten, Estabrook & Weeden v. Ellis, 849 F.2d 264, 271 (7th Cir.1988); Workman, 958 F.2d at 337. Once again, Defendants rely on "plain error" to excuse their omission, but no such error exists. The same rule applies with respect to Defendants' contention that the arbitrator erred by not requiring the investors to tender the securities at issue to ARW. They never made this argument below and will not be allowed to advance it here.
 
 
 49
 Defendants' other assertions are nothing more than alleged errors of law and need not, and should not, be considered at length, such as the argument that the arbitrator incorrectly concluded that the joint venture interests were "securities" within the meaning of the federal securities acts. The arbitrator's decision in this regard, even if wrong, cannot be characterized as "willful inattentiveness to the governing law." Jenkins, 847 F.2d at 634. As for the argument that the arbitrator should have made certain deductions for investment income Plaintiffs received, the award clearly states that the damages are "net of distributions." In any event, courts are not to instruct the arbitrator as to the correct computation of damages. Marion Mfg. Co. v. Long, 588 F.2d 538, 541 n. 3 (6th Cir.1978) (citing cases). A court may modify or correct the award only if it is "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. Sec. 11(c); Foster, 808 F.2d at 42-43. The Court will not disturb the arbitrator's award on these grounds.
 
 VII.
 
 50
 Finally, we reject Defendants' assertions concerning the arbitrator's conduct. Defendants claim the arbitrator should have continued the arbitration hearing because defense counsel could not contact Armenis. 9 U.S.C. Sec. 10(a)(3) permits a court to vacate the arbitrator's award where the arbitrator refused to postpone a hearing upon sufficient cause shown. Because the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited. See Raiford v. Merrill Lynch, Pierce, Fenner & Smith, 903 F.2d 1410, 1413 (11th Cir.1990) ("When the parties agreed to submit to arbitration, they also agreed to accept whatever reasonable uncertainties might arise from the process."); Fairfield & Co. v. Richmond F. & P. R.R. Co., 516 F.Supp. 1305, 1313-14 (D.D.C.1981) ("[A]ssuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds.").
 
 
 51
 In this case, Defendants failed to demonstrate sufficient cause for postponing the hearings, and the arbitrator was clearly acting within the scope of his discretion in not continuing the hearing and conducting it without Defendants or defense counsel present. The arbitrator gave the parties over eight weeks' notice of the pre-hearing conference and hearing. Defendants waited until the day of the pre-hearing conference to request a continuance--less than a week before the hearings' commencement. Defendants based their request on the rather flimsy excuse that Armenis was traveling overseas and could not be reached for consultation. Defendants never indicated that they were unaware of the hearing date, that Armenis scheduled his travel before or after the arbitrator set the hearing date, or if the travel was for emergency, as opposed to recreational, purposes. Defendants' argument that Armenis himself should have been given notice of the hearing date, and not just Armenis' counsel, is patently meritless. Additionally, Defendants have offered no excuse justifying defense counsel's complete absence from the arbitration hearings. The arbitrator was well within his discretion in refusing to postpone the hearings.
 
 CONCLUSION
 
 52
 The determination of whether Plaintiffs had good cause for extending the 120-day service of process deadline in the Florida action, and the question of whether Armenis is personally bound to arbitrate, are REMANDED for further proceedings consistent with this opinion. The district court's order compelling arbitration and confirming the arbitration award is in all other respects AFFIRMED.
 
 
 
 *
 Honorable Juan G. Burciaga, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 The 1993 amendments to the Federal Rules of Civil Procedure retain the 120-day service of process deadline and the good cause exception. Fed.R.Civ.P. 4(m)