**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 10 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

FURR'S SUPERMARKETS, INC.;
SMITH'S FOOD AND DRUG
CENTERS, INC.,

        Plaintiffs-Appellants,

v.

UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 1564,

        Defendant-Appellee.

Nos. 97-2002 & 97-2020
(D.C. No. CIV-95-1511-LH/DJS)
(D. N.M.)

ORDER AND JUDGMENT[*]

Before KELLY, McKAY, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs, Furr's Supermarkets, Inc. and Smith's Food & Drug Centers, Inc. (collectively, employers), brought suit to challenge a labor arbitration decision favoring defendant United Food and Commercial Workers Union, Local Union #1564 (the union), in a dispute over the compensability of certain employee training time. On cross-motions for summary judgment, the district court ruled for the union, thereby leaving the underlying arbitration award undisturbed. For the reasons explained below, we affirm.

The question resolved in arbitration was whether employers violated their collective bargaining agreements (CBAs) with the union when they refused to remunerate employees for time and expenses associated with completing an alcohol-server program mandated by statute and enforced by the state as a condition on employers' liquor licenses. After determining that the matter could not be resolved by reference to any particularized CBA provision or past practice, the arbitrator turned to interpretation of the general term "work" used in the CBAs. Presuming the parties intended their agreements to be construed in compliance with the Fair Labor Standards Act (FLSA), the arbitrator considered the implemental regulations regarding the status of training time, 29 C.F.R. §§ 785.27 - 785.30, as well as related case law, and concluded in conformance therewith that the alcohol-server program constituted compensable work within the meaning of the CBAs.

Our consideration of this case is guided by two distinct standards of review: one regarding the unique deference owed by all federal courts to the designedly nonjudicial disposition of the arbitrator, and the other relating to the traditional matter of appellate review of the determinations of a subordinate court. As for the former,

> [j]udicial review of an arbitral award . . . is among the narrowest known to the law. The arbitrator's factual findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the collective bargaining agreement, so is his interpretation of the contract. As long as the arbitrator's award draws its essence from the collective bargaining agreement it must be upheld.

Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union, 24 F.3d 86, 87 (10th Cir. 1994) (quotations and citations omitted). As for the latter, "courts of appeals should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards," i.e., while "courts grant arbitrators considerable leeway when reviewing most arbitration decisions[,] . . . that fact does not mean that appellate courts should give *extra* leeway to district courts that uphold arbitrators." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948 (1995). Accordingly, "[a]s in other cases in which the district court grants summary judgment, we review the grant of summary judgment in [this] labor arbitration case de novo." Champion Boxed Beef Co., 24 F.3d at 87.

Employers' primary contention is that the arbitrator improperly relied on extrinsic federal law and, consequently, arrived at an unauthorized decision that did not draw its essence from the CBAs. Secondarily, employers argue that the arbitrator erred both in his application of federal law and in his construction of the CBAs' provisions.

## I

There is no blanket prohibition on the use of federal law in conjunction with the arbitration of collective bargaining disputes. On the contrary, an arbitrator "may of course look for guidance from many sources" including "'the law' for help in determining the sense of the agreement," United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 598 (1960), provided the law is used to clarify, not contradict, the CBA's terms, see Alexander v. Gardner-Denver Co., 415 U.S. 36, 53 (1974). See generally Frank Elkouri & Edna Asper Elkouri, How Arbitration Works 535-36 (Marlin M. Volz & Edward P. Goggin eds., 5th ed. 1997). Indeed, "[a]rbitrators often construe collective bargaining agreements in light of statutes and case law." Id. at 486.

Nonetheless, the arbitrator's power in this regard is contingent upon authorization from the parties:

> When the parties to a dispute agree to use the private solution of arbitration, they control the appointment and the authority of the arbitrator and by the submission agreement [stating the issue to be

decided] can expressly regulate to what extent, if any, the arbitrator
is to consider applicable law. . . .

. . . Thus, for instance, they may expressly direct that the case
be decided consistent with applicable law, or they may restrict the
arbitrator's authority to interpret the law. . . .

Unless the parties specifically limit the powers of the arbitrator
in deciding various aspects of the issue submitted, it is often
presumed that they intend to make the arbitrator the final judge on
any questions that arise in the disposition of the issue, including not
only questions of fact but also questions of contract interpretation,
rules of interpretation, and questions, if any, with respect to
substantive law.

Id. at 516-18 (footnotes omitted); see, e.g., Richmond, Fredericksburg & Potomac

R.R. v. Transportation Communications Int'l Union, 973 F.2d 276, 279 (4th Cir.

1992) (rejecting "any sort of blanket prohibition on an arbitrator's recourse to

legal authority," because "the limits of an arbitrator's authority are defined by the

terms of the parties' own submission").

## A

Employers contend the parties' submissions in this case, which asked only

whether the CBAs had been violated, placed any consideration of FLSA

regulations and case law beyond the reach of the arbitrator.  Employers argue this

case thus resembles Interstate Brands Corp. v. Local 441 Retail, Wholesale &

Department Store Union, 39 F.3d 1159 (11th Cir. 1994), in which the Eleventh

Circuit held an arbitrator exceeded his authority to determine the parties'

contractual rights by applying Department of Transportation regulations in the

-5-

course of resolving a dispute over the dismissal of a truck driver for drug use. We view the asserted resemblance as imperfect, in at least one critical respect. Unlike here, where FLSA regulations were used to flesh out the meaning of a general CBA term, in Interstate Brands the DOT regulations were used to resolve a collateral, procedural issue that arose under the regulations themselves and had no direct roots in the CBA at all:

> In this case, the arbitrator went beyond the collective bargaining agreement and undertook to interpret the DOT regulations requiring a "chain of custody" for the [urine] specimen. The arbitrator resolved the issue of the admissibility of the drug test without reference to the contract at all. . . .
>
> In looking to the regulations, the arbitrator acknowledged that it is DOT, not the contract, which mandates drug testing for interstate truck drivers. It is DOT which has established the protocol for this program. What these procedures require is an issue wholly outside the scope of the collective bargaining agreement.

Id. at 1162. Here, we cannot simply say, in similarly categorical terms, that the mandate of pay for work, and what constitutes work for purposes of that mandate, are matters wholly independent of the CBAs construed by the arbitrator. On the other hand, we acknowledge that neither the parties' written submissions nor the arbitration provisions of the CBAs themselves affirmatively direct the arbitrator to consider extrinsic federal law as an interpretive aid.

**B**

-6-

We need not decide as a general matter whether an explicit, affirmative authorization is necessary, however, because we conclude employers essentially conceded the issue during the hearing before the arbitrator. See, e.g., In re Arbitration Between United Indus. Workers v. Virgin Islands, 987 F.2d 162, 168-69 (3d Cir. 1993); Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, 760 F.2d 173, 175-76 (7th Cir. 1985). The following exchange at the arbitration hearing provided an ample basis for the arbitrator's presumption that FLSA regulations and case law--already interjected by the parties in their pre-hearing briefs, see Appellants' Appendix at 59, 62--could properly be referred to for interpretive guidance:

> [Employers' counsel]:     As I understand the union's position, they're taking the position that this is work within the meaning of the collective bargaining agreement. Admittedly, there is no specific definition of work. And how the industry regards the issue of work, which has both independent and contractual meaning under Fair Labor Standards Act, and under just practice, in general, is very relevant, because we're not talking about specific contract language here. We're talking about the union taking the position that this falls into the general category of the word "work."
>
> [Union counsel]:   We would agree that to figure out what "work" means, you've got to look at the act, and you've got to look at other laws, and we absolutely agree that you have to look at the Fair Labor Standards Act. Because what the company did relates to the Fair Labor Standards Act, then I think it's going to compel the arbitrator to rule in our favor, because the rule says you can't -- you can't look at a contract in a way that causes the contract to violate the law.
>
>          . . . .

-7-

[Employers' counsel]: It's extremely relevant because the Fair Labor Standards Act applies to all of these companies, and the State of New Mexico will not enforce a law inconsistent with the federal guidance of the Fair Labor Standards Act.

Id. at 125-26.

Employers insist they nevertheless preserved the point in their post-hearing brief, which passingly asserted in a footnote that "the Union's [FLSA] argument is inappropriate in this forum" because "[i]t is the Department of Labor that has jurisdiction to interpret and enforce the [FLSA]," id. at 49 n.3. However, as DOL jurisdiction extends to the disposition of statutory--not contractual--claims, this conclusory objection does not address the arbitrator's authority to consider FLSA regulations when construing and enforcing CBAs.[1] Employers further confused the matter by later indicating their point was that the CBAs were clear enough that resort to federal law was simply *not necessary* for a ruling in their favor, though, if used, it would bolster their interpretation. See id. at 51. This position, if it implied anything about the arbitrator's authority, suggested such authority included the use of extrinsic law to clarify ambiguous CBA terms. Finally, we

---

[1] We would certainly agree that the parties did not authorize the arbitrator to resolve independent statutory claims under the FLSA. Indeed, it is uncertain whether such authorization could be given, particularly in this collective bargaining context, where the individual assent of the workers involved is absent. See generally Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1472-83 (D.C. Cir. 1997) (distinguishing statutory and contractual claims and discussing validity of agreements to arbitrate former in CBA and non-CBA contexts after Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)).

note employers had full opportunity to argue the merits of the case in relation to FLSA law. Indeed, the arbitrator's decision reveals his reasonable understanding that employers *expected* him to consider FLSA law.

In short, employers "did not . . . make clear that [they] w[ere] preserving [a] challenge for eventual presentation to a court if the arbitrator ruled in the union's favor." Jones Dairy Farm, 760 F.2d at 175. And, as our preliminary discussion of the question above shows, it is by no means obvious that the arbitrator exceeded his authority in deciding the CBA dispute as he did. Bearing in mind that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver*,'" we hold employers failed to preserve any objection in this regard. Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1440 (9th Cir. 1994) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)) (alteration in original).

## II

As a fall-back position, employers contend the arbitrator's reliance on extrinsic federal law, even if proper, undercuts any judicial deference to his resulting decision. With this supposition as license, employers launch an extensive challenge on the merits. In our view, this whole line of argument reflects a basic misconception about collective-bargaining arbitration, suggesting

that its unique status vis-à-vis the courts is a variable contingency based on the particular subject in dispute, rather than an inherent consequence of its institutional function.

## A

Judicial review of arbitration decisions is limited "[b]ecause a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1463 (10th Cir. 1995) (quotation omitted); see Elkouri & Elkouri, supra, at 10 (arbitration saves "time, expense, and trouble" where "costly, prolonged, and technical procedures of courts are not well adapted to the peculiar needs of labor-management relations"). That primary purpose remains regardless of the factual or legal content of the decision. See Northrop Corp. v. Triad Int'l Mktg. S.A., 811 F.2d 1265, 1269 (9th Cir. 1987) ("To now subject [an arbitrator's legal conclusions] to de novo review would destroy the finality for which the parties contracted and render the exhaustive arbitration process merely a prelude to the judicial litigation which the parties sought to avoid.").

Thus, even "[a]n arbitrator's erroneous interpretations or applications of the law are not reversible. Only 'manifest disregard' of the law is subject to reversal." ARW Exploration Corp., 45 F.3d at 1463 (citation omitted) (quoting and following Wilko v. Swan, 346 U.S. 427, 436-37 (1953)); accord Richmond,

973 F.2d at 281; <u>Northrop Corp.</u>, 811 F.2d 1269.  Our record does not suggest any such "willful inattentiveness to the governing law." <u>ARW Exploration Corp.</u>, 45 F.3d at 1463 (quotation omitted).  On the contrary, the arbitrator's extensive, thoughtful analysis of the pertinent FLSA regulations and case law reflect "a good faith effort to apply the law as he perceive[d] it." <u>Richmond</u>, 973 F.2d at 281. We therefore must decline employers' invitation to engage in a substantive reconsideration of the merits of the parties' dispute.

**B**

There are, however, two particular objections advanced by employers in this regard that warrant additional comment, if only to help clarify the extent and significance of the judicial deference thus far discussed in fairly abstract terms. First, employers argue the arbitrator's award violates CBA "no-modification" provisions, <u>see</u> Appellants' Appendix at 42, 44 ("the arbitrator shall not have the power to add to, subtract from or in any way modify the terms of this Agreement, and shall limit his decision strictly to the interpretation of [its] language"), and "zipper clauses," <u>see</u> <u>id.</u> at 42, 45 ("each [party] agrees that the other shall not be obligated to bargain collectively with respect to any subject matter not specifically referred to or covered in this Agreement").  The arbitrator considered these provisions and deemed them consistent with his decision.  He indicated that he was adhering to the former by interpreting, not modifying, the CBAs, and

-11-

concluded that the latter "preclude[] either party from demanding the other to negotiate over [new] subject[s]," but "do[] not place any restrictions on the Arbitrator, who has the authority to interpret the language agreed upon between the parties." Id. at 168. Whether or not we would reach the same conclusions, we cannot say the arbitrator "ignore[d] the plain language of the [CBAs]," and, consequently, his expressed understanding thereof is beyond our review. Champion Boxed Beef Co., 24 F.3d at 87.

Employers' second objection is that the arbitrator failed to accord proper deference to an opinion letter of the Wage-Hour Administrator applying the FLSA regulations and reaching a contrary conclusion under fairly similar circumstances. A *court*, of course, must defer to an agency's interpretation of its own regulation unless "plainly erroneous or inconsistent with the regulation," Auer v. Robbins, 117 S. Ct. 905, 911 (1997) (quotations omitted), and should even be "hesitant to contravene" an informal agency opinion interpreting a statute, Townsend v. Mercy Hosp., 862 F.2d 1009, 1012-13 (3d Cir. 1988) (following Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). But, again, a fundamental purpose of arbitration, particularly of CBA claims, is to provide a distinct alternative, substantively and procedurally, to traditional adjudication; arbitration is not simply litigation in another forum, but an entirely different species of dispute resolution, one better understood, rather, as a continuation of the collective bargaining process itself:

"... Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the [CBA].

... The grievance procedure is, in other words, a part of the continuous collective bargaining process."

Cole, 105 F.3d at 1473-74 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960)). Thus, "arbitrators perform functions different from those performed by courts." Id. at 1474. They exercise a uniquely informed, broad-ranging, and autonomous judgment, and "it was [t]his judgment and all that it connotes that was bargained for"--not the conventionalized and constrained legal analysis of a court--when the parties included the arbitration provision in their CBAs. Id. (quotation omitted).

"Put most simply, the arbitrator is the parties' officially designated 'reader' of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement. ... In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award *is* their contract. ... In sum, the arbitrator's award should be treated as though it were a written stipulation by the parties setting forth their own definitive construction of the contract."

Id. at 1474-75 (quoting Theodore J. St. Antoine, Judicial Review of Labor Arbitration Awards: A Second Look at *Enterprise Wheel* and its Progeny, 75 Mich. L. Rev. 1137, 1140 (1977)) (footnote omitted).

This remains true where, as here, the arbitrator informs his judgment by reference to external law. "In [such] cases, although public law is relevant to determining what contractual rights the parties enjoy, the rights themselves are still privately created contractual rights, not publicly created statutory rights," id. at 1475, and, thus, "'*the arbitrator's award implements the parties' agreement to be bound by his analysis of the statute, rather than by the statute itself,*'" id. (quoting St. Antoine, supra, 75 Mich. L. Rev. at 1143) (alteration in original). Requiring the arbitrator to defer to an agency's interpretation of the pertinent regulations would turn the parties' arbitration agreement on its head. The broad, binding authority they privately agreed to vest in a nonjudicial arbitrator would be superseded by the Wage-Hour Administrator--on the basis of a *judicial* principle of administrative deference. Further, in policing arbitration for compliance with that legal principle (and all the administrative law it would bring into play), the courts would clearly be engaged in improper "merits" review of arbitrators' decisions. We conclude the weight, if any, to be accorded agency opinions was solely a matter for the arbitrator's judgment. Cf. Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' Int'l Union, 980 F.2d 1424, 1429 (11th Cir. 1993) ("An arbitrator's decision allocating the burden of proof among the parties or in fixing the legal framework for evaluation of a grievance ordinarily cannot be reviewed in federal court."). See generally Public Serv. Co. v. International Bhd. of Elec.

Workers, 902 F.2d 19, 20 (10th Cir. 1990) ("[T]he power of arbitrators concerning every body of law is broader than the power of courts concerning those same bodies of law.")

**III**

Finally, we must address a matter of appellate procedure. Employers have filed two motions to supplement the record. We deny both. In the first, they ask to add evidentiary materials omitted from their summary judgment submission, assertedly on account of the page limitation set out in D.N.M. R. 10.5 (restricting exhibits accompanying motion to fifty pages). Employers never sought leave to exceed this page limitation in the district court. They are in no position to request such relief now, in an attempt to overturn the district court's determination of the case on the record as developed, without objection, below. See generally Reid v. Oklahoma, 101 F.3d 628, 630-31 (10th Cir. 1996) ("As a court of review, we may examine additional documents culled from the district court file and consider new legal authority, but we may not enlarge the evidentiary record to include material unavailable to the district court . . . ."), cert. denied, 117 S. Ct. 1707 (1997). In their second motion, employers ask to submit the decision of another arbitrator, who addressed a CBA claim similar to those arbitrated here. The proffered decision would not be material to our disposition of this appeal.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED. Plaintiffs-Appellants' motions to supplement the record are denied.

Entered for the Court


Monroe G. McKay
Circuit Judge