CEEG (SHANGHAI) SOLAR SCIENCE & TECHNOLOGY CO., LTD,
Plaintiff–Appellant,

v.

LUMOS LLC, n/k/a LUMOS Solar LLC, Defendant–Appellee.

No. 15-1256

United States Court of Appeals,
Tenth Circuit.

Filed July 19, 2016

John S. Lutz (Courtney P. Hirsekorn, with him on the briefs), Fairfield and

Woods, Denver, Colorado, for Plaintiff–Appellant.

Meghan Paulk Ingle (James R. Nelson, DLA Piper, Dallas, Texas, with her on the brief), DLA Piper, Austin, Texas, for Defendant–Appellee.

Before LUCERO, GORSUCH, and PHILLIPS, Circuit Judges.

LUCERO, Circuit Judge.

CEEG (Shanghai) Solar Science & Technology Co., Ltd. ("CEEG"), a Chinese company, agreed to sell solar energy products to LUMOS, LLC, a United States company. After receiving certain shipments, LUMOS filed a warranty claim alleging workmanship defects, and refused to remit the balance due. After two years of fitful negotiations, CEEG filed an arbitration proceeding pursuant to the parties' agreements. Although the parties had communicated exclusively in English to that point, CEEG served LUMOS with a Chinese-language notice of the proceedings, and LUMOS did not immediately realize what the notice was. After the arbitration panel ruled in its favor, CEEG moved for the district court to confirm the award. LUMOS filed a motion to dismiss, arguing that the Chinese-language notice caused it to miss the deadline to participate in appointing the arbitration panel. The district court granted the motion, finding that the notice was not reasonably calculated to apprise LUMOS of the arbitration proceedings. We agree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

CEEG is a solar panel manufacturer in China. LUMOS is headquartered in Colorado and sells solar energy products to consumers. On June 29, 2009, CEEG and LUMOS entered into a Co-Branding Agreement (the "Agreement") under which LUMOS agreed to order a certain minimum quantity of solar products from CEEG over a period of three years. The Agreement set forth terms related to pricing, payment, packaging, and delivery. It also contained a warranty provision guaranteeing that CEEG would deliver conforming goods. Under the Agreement, details regarding individual orders were to be set forth in subsequent purchase contracts. The Agreement provided that "all documentation, notices, judicial proceedings, and dispute resolution and arbitration entered into, given, instituted pursuant to, or relating to, this Agreement be drawn up in the English language." It also provided that any disputes would be subject to arbitration by the China International Economic and Trade Arbitration Commission ("CIETAC").

On May 14, 2010, CEEG and LUMOS executed a Sales Contract (the "Contract"), which provided that after receiving a deposit payment, CEEG would deliver certain solar products to LUMOS. LUMOS was required to pay the remaining balance within sixty days of shipping. As did the Agreement, the Contract contained a provision that CIETAC would resolve any dispute. However, unlike the Agreement, the Contract did not stipulate that arbitration proceedings would be in English, and instead indicated only that any arbitration "shall be conducted in accordance with [CIETAC's] arbitration rules." Under CIETAC's arbitration rules, if "the parties have agreed on the language of arbitration, their agreement shall prevail. In the absence of such agreement, the language of arbitration ... shall be Chinese or any other language designated by CIETAC having regard to the circumstances of the case." CIETAC Rules art. 71 § 1. The Contract also stated if its Chinese and English versions conflicted, the English version would govern. Additionally, although the Contract did not contain a warranty provision, it did provide

that LUMOS could file a "quality discrepancy" claim within thirty days of receiving the goods.

LUMOS made the deposit payment and CEEG delivered solar products in two shipments. LUMOS alleged that the delivered goods were defective. LUMOS thus filed a warranty claim with CEEG, stating that it would not pay the outstanding balance of $1,372,445.10 until the warranty claim was addressed. A CEEG manager advised LUMOS to replace defective panels using LUMOS' existing inventory, indicated "there is no problem for replacing," and explained that "[r]eplacing panels definitely need [sic] to be done ASAP, no matter what is the final settlement." Based on these comments, LUMOS used product from its inventory and requested replacement product, but never received substitutes from CEEG.

Over the following two years, the companies exchanged numerous emails about the allegedly defective goods. In May 2011, CEEG performed an on-site inspection. The inspector confirmed the modules were defective, but CEEG did not act to remedy the defects. Instead, on December 19, 2012, CEEG sent a letter demanding payment and threatening legal action. LUMOS responded that it was withholding payment pending resolution of the warranty claim. In a January 24, 2013 letter, CEEG stated its belief that the warranty claim arose under a different purchase contract and could not excuse a payment obligation under the Contract. The January 24 letter again demanded payment and asserted that failure to pay would result in an arbitration claim filed with CIETAC. On the same day, LUMOS responded with an email in which it again declined to pay and requested good-faith efforts to resolve the warranty claims outside of arbitration. The email also stated that it would "fight to protect [LUMOS'] interests ... with the full the [sic] force of our legal council

[sic] and the resources available to us from the US Department of Commerce and the International Trade Commission." CEEG filed its arbitration claim with CIETAC on March 22, 2013.

On April 4, 2013, an arbitration notice and other documents were delivered to LUMOS. The documents were entirely in Chinese, except that the name of CEEG's counsel appeared in English and the numerical value of the outstanding payment ($1,372,445.10) appeared in Arabic numerals. Although the shipping label identified CIETAC as the sender in English, LUMOS claims its executives never viewed the label. Thus, LUMOS did not realize that the documents purported to constitute notice of arbitration. Scott Franklin, LUMOS' CEO, set the Chinese letter aside and made a note to follow up with CEEG.

LUMOS had fifteen days after receiving notice to appoint an arbitrator. CIETAC Rules art. 25. But because LUMOS did not realize the documents were a notice of arbitration, it did not respond within that window. On May 7, 2013—after the appointment window had closed—Franklin sent an email to CEEG offering to settle the dispute, and attaching a copy of the Chinese documents with a note that LUMOS could not understand the documents. CEEG's counsel responded in an email, stating:

> the letter you received was from CIETAC, the arbitration institution to which Lumos [sic] agreed in its sales contracts with CEEG.... The contractual arbitration clause did not specify a language for the arbitration and the CIETAC default language is Chinese. Your company has been sued in arbitration in China. I recommend you seek counsel and avoid the risk of an adverse award for failure to defend your company in the arbitration.

In the email, counsel stated she would send the settlement proposal to CEEG for consideration. On May 20, Franklin asked for a response regarding the settlement proposal. CEEG rejected the offer.

After receiving actual notice of the arbitration, LUMOS worked diligently to secure Chinese counsel for the arbitration proceedings. The process of securing counsel was complicated, and took several weeks to complete. Meanwhile, on May 27, 2013, CIETAC and CEEG appointed arbitrators without input from LUMOS.

On June 20, 2013—a week prior to the scheduled arbitration—LUMOS' counsel recommended that Franklin request a two-month extension to prepare for the arbitration. The arbitrators granted the extension, rescheduling the hearing for September 14, 2013. At the hearing, which was conducted in Chinese, LUMOS argued that the defects in delivered goods relieved LUMOS of its payment obligation under the Agreement's warranty provision, which should be read to apply to the Contract. However, the arbitration panel disagreed that the Agreement's warranty provision applied, holding that the two contracts "are not consistent in terms of such important clauses as quantity, delivery, [and] payment of the contractual subject matters" and thus "[i]t cannot be concluded that the Sales Contract refers to a contract for a certain batch under the Co-Branding Agreement." It held, "the stipulations concerning quality assurance and warranty period under the Co-Branding Agreement quoted by [LUMOS] have no binding force on the Sales Contract." The panel also observed that CIETAC had jurisdiction under the arbitration clauses in the Contract, not the Agreement, and thus the Agreement did "not fall within the scope of trial of this case." Accordingly, it concluded LUMOS could not raise its warranty defenses. On June 13, 2014, the panel determined that LUMOS had breached its payment obligations and ordered it to pay the outstanding principal plus interest, costs, and attorneys' fees.

CEEG then moved for confirmation of the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). See New York Convention, art. IV, June 10, 1958, 21 U.S.T. 2517 (a party may apply "for recognition and enforcement" of an arbitral award subject to the Convention). LUMOS filed a motion to dismiss, arguing, inter alia, that the notice of the arbitration proceedings was insufficient and violated the due process exception to enforcement under the New York Convention. The district court agreed that the Chinese-language notice was not reasonably calculated to apprise LUMOS of the proceedings because all interactions between CEEG and LUMOS up to the point of the arbitration notice had been in English, and both the Agreement and the Contract reinforced that interactions between the parties were to proceed in English. The court also observed that the Agreement's choice of language provision should have governed the arbitration because that document was the "master agreement" which served as an "umbrella" setting forth the terms for LUMOS' and CEEG's business relationship. Thus, the district court denied the motion to confirm the arbitration award, and granted the motion to dismiss with prejudice. This appeal followed.

## II

In reviewing a district court's decision regarding confirmation of an arbitration award, we review legal questions de novo and factual findings for clear error. Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C., 430 F.3d 1269, 1275 (10th Cir. 2005). An error is clear "if the district court's findings lack factual sup-

port in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred." See Middleton v. Stephenson, 749 F.3d 1197, 1201 (10th Cir. 2014).

 We do not owe deference to the district court's legal conclusions, but we afford "maximum deference" to the arbitrators' decisions. See ARW Expl. Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995). Our standard of review of arbitral awards "is among the narrowest known to the law." Id. (quotation omitted). We are "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of· the contract." United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Thus, "[a]n arbitrator's erroneous interpretations or applications of law are not reversible." ARW Expl. Corp., 45 F.3d at 1463. Although

> [t]he arbitrator may not ignore the plain language of the contract . . . [,] as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

United Paperworkers Int'l Union, 484 U.S. at 38, 108 S.Ct. 364.

 Under the New York Convention, a court must "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005). The defenses specified in the New

York Convention include: (1) "[t]he party against whom the award is invoked did not receive proper notice . . . of the arbitration proceedings"; and (2) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." New York Convention art. V(1)(b) & (d). Courts construe these defenses "narrowly, to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." See Karaha Bodas Co. v. Perusahaan, 364 F.3d 274, 288 (5th Cir. 2004) (quotation omitted). As the party opposing enforcement of the arbitral award, LUMOS bears the burden of proving that one of the defenses applies. Id. Moreover, CEEG argues that to overcome the strong presumption in favor of enforceability under the Convention, LUMOS must also show prejudice from any procedural error. Accord id. at 296. The district court held that LUMOS had carried its "heavy burden" because CEEG's insufficient notice deprived LUMOS of the opportunity to designate the arbitration panel, and the panel's composition was therefore not in accordance with the parties' agreement. This appeal thus turns on the first defense—adequacy of notice.

 To judge compliance with the New York Convention's "proper notice" requirement, courts look to the forum's standards of due process. See Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).[1]

---

1. Because our analysis concerns only whether notice in Chinese was reasonably calculated to apprise LUMOS of the arbitration proceed-

ings, we do not consider CEEG's arguments that LUMOS should have known that the documents constituted notice.

■ We conclude that the Chinese-language notice was not reasonably calculated to apprise LUMOS of the proceedings. All previous communications between CEEG and LUMOS had been in English, the Contract reinforced that English would govern the relationship by requiring that the English language version of the Contract would control, and the Agreement memorialized the parties' understanding that all interactions and dispute resolution proceedings would be in English.[2] Nearly a month after the notice had been sent, CEEG responded to an email from LUMOS with a short English-language explanation that the Chinese documents constituted notice. Thus, CEEG demonstrated the ease with which it could have sent notice in a language it knew LUMOS would understand. Simply, CEEG could not have reasonably calculated that notice in a language it knew LUMOS' executives would be unable to comprehend would apprise LUMOS of the arbitration proceedings.[3] On these facts, we conclude that notice in Chinese was not reasonably calculated to apprise LUMOS of the CIETAC proceedings.

■ CEEG contends LUMOS must demonstrate prejudice from any deficient notice. In support of a prejudice requirement in the context of the New York Convention, CEEG cites several out-of-circuit cases. See Karaha Bodas Co., 364 F.3d at 296; Calbex Mineral Ltd. v. ACC Res. Co., 90 F.Supp.3d 442, 459 (W.D. Pa. 2015); Compagnie des Bauxites de Guinee v. Hammermills, Inc., 1992 WL 122712, at *5 (D.D.C. May 29, 1992). LUMOS does not contest that a prejudice requirement applies. We thus assume without deciding that a party opposing confirmation of an arbitral award under the New York Convention must demonstrate prejudice in order for a defense to apply.

The district court found that the Chinese-language notice caused LUMOS to remain unaware that arbitration proceedings had commenced, thereby depriving it of the opportunity to participate in selecting arbitrators. But CEEG contends that CIETAC's appointed arbitrators were "neutral," and thus the proceedings did not prejudice LUMOS. This argument is unconvincing. The New York Convention itself provides improper composition of the arbitral tribunal as a defense to confirmation of an arbitration award. New York Convention art. V; see also Encyclopaedia Universalis S.A., 403 F.3d at 91–92 (affirming refusal to confirm arbitral award because the "composition of the arbitral authority was not in accordance with the parties' agreement"). Hindering the right

2. CEEG argues that we must defer to the arbitration panel's determination that the Agreement does not govern the transaction memorialized in the Contract. But we reject the contention that we "must overlook agreed-upon arbitral procedures" in deference to the public policy in favor of international arbitration. Accord Encyclopaedia Universalis, 403 F.3d at 91. Moreover, our holding does not rely on the conclusion that the Contract was bound by the terms of the Agreement. Rather, the Agreement is one piece of evidence demonstrating that the parties understood their relationship would proceed in English, and that CEEG suddenly deviated from that understanding and practice when providing notice.

3. CEEG argues that CIETAC, and not CEEG, sent the arbitration notice. This argument is undermined by the fact that the notice letter appears to have been signed by CEEG's counsel. Regardless, CIETAC's rules plainly state that absent agreement between the parties, arbitration proceedings will be held in "Chinese or any other language designated by CIETAC having regard to the circumstances of the case." CIETAC Rules art. 71 § 1 (emphasis added). Thus, CEEG could have moved for CIETAC to proceed in English. CEEG cannot avoid responsibility for insufficient notice by arguing that it assigned to a third party the duty to ensure that the notice was reasonably calculated to apprise LUMOS of the proceedings.

to participate in the panel-selection process is not a minor procedural misstep. The arbitral tribunal determines the parties' rights with virtually no possibility of appeal or review. See ARW Expl. Corp., 45 F.3d at 1462 (our standard of review of arbitral awards "is among the narrowest known to the law" (quotation omitted)). We agree with the district court that depriving LUMOS of the right to participate in appointing the arbitral tribunal itself evidences substantial prejudice.

CEEG further argues that LUMOS was not prejudiced because LUMOS received actual notice in the May 7, 2013 email, but CIETAC did not "officially appoint" the three-person arbitral tribunal until twenty days later. During that period, LUMOS did not enter an appearance in the arbitration, and specifically did not request that the appointment deadline be extended. CEEG argues that LUMOS has not provided a reasonable explanation for its failure to appear in the proceedings until June 20, 2013. CEEG contends that LUMOS' unreasonable inattentiveness—and not insufficient notice—caused any inability to select an arbitrator.

■ This argument suffers two fatal flaws. CEEG did not argue that LUMOS failed to diligently pursue its rights until its reply brief. The argument is therefore waived. Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). Even were the argument not waived, we review the district court's factual findings for clear error. Dominion Video Satellite, Inc., 430 F.3d at 1275. The district court found that LUMOS diligently engaged the services of a translator to translate the Chinese-lan-

guage notice to English. However, because the process of retaining Chinese counsel to represent LUMOS in the arbitration was "surprisingly" complicated, the court found credible Franklin's testimony that it took "weeks" to secure representation. Rather than offering evidence to refute the district court's conclusions, CEEG relies on a conclusory argument that LUMOS should bear the burden of providing additional support for the district court's findings. We reject this argument. Record evidence supports, rather than refutes, the district court's factual findings, and we are not left with "a definite and firm conviction that the district court erred." See Middleton, 749 F.3d at 1201.[4] On these facts, we agree with the district court that LUMOS met its heavy burden of demonstrating that insufficient notice caused prejudice by rendering LUMOS unable to participate in appointing the arbitration panel, rendering the remaining proceedings invalid under the New York Convention.

## III

The district court's dismissal with prejudice is **AFFIRMED**.

---

4. Similarly, CEEG's argument that LUMOS did not preserve any objection to the panel's composition was also raised for the first time in reply. Moreover, based on Franklin's testimony, the district court found that LUMOS preserved its objection to the panel composition by raising it in the arbitration proceedings. On appeal, CEEG does not present any evidence to contradict this finding.