**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

A. KERSHAW, P.C.,

    Petitioner - Appellant,

v.

SHANNON L. SPANGLER, P.C.,

    Respondent - Appellee.

No. 16-1483
(D.C. No. 1:16-CV-01351-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Knowledge Strategy Solutions, LLC (KSS) was a Missouri limited liability

company with two members—the respective professional corporations of

Shannon Spangler and Anne Kershaw. A dispute over the dissolution of KSS led to

arbitration, and the arbitrator ruled in favor of Shannon L. Spangler, P.C. (Spangler

PC). The district court confirmed the arbitration award. A. Kershaw, P.C. (Kershaw

PC) now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

In 2013, Spangler PC and Kershaw PC formed KSS to provide consulting services regarding data, records and knowledge management, e-discovery and related matters.  In the spring of 2014, however, Ms. Spangler's health caused Spangler PC to seek to withdraw from KSS.

The parties negotiated the withdrawal between May and June 2014, but the process was not amicable.  Although the parties agreed that the effective withdrawal date would be June 30, 2014, on June 26 Ms. Kershaw filed Articles of Termination for KSS and a Notice of Winding Up with Missouri's Secretary of State.  The Secretary of State issued a Certificate of Termination certifying that KSS ceased its existence that same day.

Ms. Kershaw did not inform Ms. Spangler of these filings, and instead of tendering to Spangler PC its capital account or any other part of KSS's monetary or intangible assets, Kershaw PC retained all of KSS's assets.  On July 28, 2014, Ms. Kershaw created a New York limited liability company, also called Knowledge Strategy Solutions, LLC (KSS-New York).  Kershaw PC placed the assets it had kept after KSS's dissolution into KSS-New York.

In August 2014, Spangler PC sued Kershaw PC, KSS, and KSS-New York in Missouri state court.  It alleged the following six claims for relief:

- Count I (against Kershaw PC and KSS)—breach of the KSS Operating Agreement by, among other things, using and transferring KSS's assets;

- Count II (against Kershaw PC and KSS) —breach of the KSS Operating Agreement for failure to pay monthly draws in June and July 2014;

- Count III (against Kershaw PC and KSS) —breach of the KSS Operating Agreement for failure to distribute Spangler PC's capital account to Spangler PC upon dissolution of KSS;

- Count IV (against Kershaw PC) —breach of fiduciary duties;

- Count V (against KSS-New York) —tortious interference with contract; and

- Count VI (against all defendants) —appointment of a receiver.

The defendants moved to compel arbitration under an arbitration provision in the KSS Operating Agreement.

In October 2014, the Missouri court concluded that Counts I, III, and IV fell within the arbitration provision and ordered Kershaw PC and Spangler PC to arbitrate those claims. It did not order KSS or KSS-New York into arbitration, however, because they were not parties to the Operating Agreement. The Missouri court retained jurisdiction over Count II because the Operating Agreement excluded "controversies regarding the compensation of Members" from the arbitration provision, Aplt. App. at 37, and it also retained jurisdiction over Counts V and VI.

The two PCs initiated arbitration in October 2014, but the proceeding was delayed when KSS-New York filed for bankruptcy protection in New York in August 2015. In October 2015, the bankruptcy court lifted the automatic stay as to the

arbitration. Its lift-stay order, however, allowed the arbitration to go forward only so long as the proceeding did not involve any avoidance claims.

The arbitration hearing took place in Denver, Colorado, in November and December 2015. During the arbitration, Kershaw PC asserted that Spangler PC had forfeited its share of KSS's assets by withdrawing from KSS and that KSS and KSS-New York were the same legal entity. For its part, Spangler PC offered the testimony of Ms. Spangler as to the damages it suffered, including the value of its capital account.

In April 2016, the arbitrator entered his final award. Applying Missouri law, he found Ms. Kershaw's June 26, 2014, filings dissolved KSS and the parties should have gone through a proper wind-up procedure. After rejecting Kershaw PC's positions regarding the alleged forfeiture upon withdrawal and the alleged relationship between KSS and KSS-New York, the arbitrator ruled in favor of Spangler PC on the three counts referred by the Missouri state court.[1] With regard to Count I, he concluded that Kershaw PC had breached the KSS Operating Agreement by improperly handling KSS's assets. And with regard to Counts III and IV, he concluded that Kershaw PC had breached the Operating Agreement by refusing to distribute Spangler PC's capital account and had breached its fiduciary duties to Spangler PC.

---

[1] The arbitrator also decided three counterclaims Kershaw PC made in the arbitration, but the parties' arguments do not concern the counterclaims and they therefore are not relevant to this appeal.

The arbitrator accepted Ms. Spangler's testimony about the value of Spangler PC's capital account and ordered an award of $97,041.09 to Spangler PC. He further ruled that the breach of the Operating Agreement "[gave] rise to *in personam* liability against Kershaw P.C. in the amount quantified." Aplt. App. at 100. In addition, he valued Spangler PC's 50% share of KSS's intangible assets at $45,200, but declined to order any award for those assets because they were in the possession of KSS-New York, which remained in bankruptcy. Finally, he awarded to Spangler PC and against Kershaw PC nearly $40,000 for reallocated arbitration fees, arbitrator compensation, and costs.

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 9 and 10(a), Kershaw PC applied to the District of Colorado to vacate the arbitration award. Spangler PC opposed the application to vacate and filed its own application to confirm the award. The district court (a magistrate judge presiding with the consent of the parties under 28 U.S.C. § 636(c)) denied Kershaw PC's application and granted Spangler PC's application. Kershaw PC now appeals.

## II. DISCUSSION

### A. Legal Standards

#### 1. Standard of Review

In assessing the district court's confirmation of the arbitration award, "we review legal questions de novo and factual findings for clear error." *CEEG (Shanghai) Solar Sci. & Tech. Co. v. LUMOS LLC*, 829 F.3d 1201, 1205 (10th Cir. 2016). "An error is clear if the district court's findings lack factual support in the

- 5 -

record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred." *Id.* at 1205-06 (internal quotation marks omitted).

Although "[w]e do not owe deference to the district court's legal conclusions," "we afford maximum deference" to the arbitrator's decision. *Id*. at 1206 (internal quotation marks omitted). Consequently, we must determine whether the district court correctly followed the restrictive standard that governs judicial review of an arbitrator's award, which we have described as "strictly limited," *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001); "extremely limited," *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005); and "among the narrowest known to the law," *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (internal quotation marks omitted).

2. **Grounds for Reversal**

It has long been the rule that "the courts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Under the FAA, when presented with an application for an order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. In turn, FAA section 10(a), codified at 9 U.S.C. § 10(a), sets forth four statutory grounds for vacating arbitral awards. The first three grounds encompass various types of "corruption, fraud, or undue means" and arbitrator misconduct. *Id.* § 10(a)(1)-(3). The fourth ground, the one that is relevant to this appeal, is "where the arbitrators exceeded their powers, or so imperfectly executed them

that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

"A party seeking relief under [FAA section 10(a)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). "It is not enough to show that the arbitrator committed an error—or even a serious error." *Id.* (alterations and internal quotation marks omitted). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers*, 484 U.S. at 36; *see also ARW Expl. Corp.*, 45 F.3d at 1463 ("An arbitrator's erroneous interpretations or applications of law are not reversible."). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers*, 484 U.S. at 38; *see also Oxford Health Plans*, 133 S. Ct. at 2068 (describing "the sole question" for courts as "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong").

In addition to the grounds set forth in FAA § 10, this court has recognized a "handful of judicially created reasons" for vacating an arbitration award. *Denver & Rio Grande W. R.R. v. Union Pac. R.R.*, 119 F.3d 847, 849 (10th Cir. 1997). Among these reasons is "manifest disregard of the law," which requires "willful inattentiveness to the governing law." *ARW Expl. Corp.*, 45 F.3d at 1463 (internal quotation marks omitted). The "manifest disregard" ground's viability has been

uncertain, however, since the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). There, the Court held that the § 10 grounds are the exclusive grounds for vacatur, *id.* at 584, and it questioned whether "manifest disregard" names a new ground for review or refers to the § 10 grounds collectively, *id.* at 585. It then emphasized that "expanding the detailed categories would rub too much against the grain of the § 9 language, where provision for judicial confirmation carries no hint of flexibility." *Id.* at 587.

B. **Analysis**

1. **Disregard of the Bankruptcy Court's Order**

Kershaw PC's first argument involves the bankruptcy court's lift-stay order. Relying on the arbitrator's finding that all of KSS's assets—monetary as well as intangible—ultimately were transferred to KSS-New York, Kershaw PC argued that in assessing damages for the value of Spangler PC's capital account, the arbitrator actually made an award of the property of KSS-New York, thereby exceeding his authority. But the district court concluded that the damages award did not require the distribution of any KSS-New York assets.

> The fact that the arbitrator quantified damages based on the capital account's value does not mean that he awarded [KSS-New York] assets paid to Spangler. This is especially true, because the capital account was an asset on the books of KSS . . . , not [KSS-New York]. Therefore, not only did the arbitrator award the value of Spangler's capital account against Kershaw personally, but the underlying asset that led to the valuation was never an asset of [KSS-New York].

Aplt. App. at 289 (citation omitted).  The district court further held that "the arbitrator's refusal to award distribution of [KSS's] intangible assets demonstrates his attentiveness to his jurisdictional limits."  *Id.* at 288.

Kershaw PC further argues, again pointing to the arbitrator's finding that all assets were transferred to KSS-New York, that the district court erred in (1) stating that the capital account was not an asset of KSS-New York, and (2) confirming the arbitrator's decision that the capital account was not entitled to bankruptcy protection, even though the intangible assets were entitled to such protection.  "In its quest to meet the high level of deference to be afforded arbitration awards, the District Court confirmed liability assessments within the Final Award that contradict factual findings with the Final Award . . . ."  Aplt. Br. at 12.  Kershaw PC further takes issue with the *in personam* nature of the award, stating that it "allowed the arbitrator to unlawfully circumvent the Lift Stay Order and federally mandated bankruptcy protections."  *Id.* at 13.  It concludes that "[t]he Final Award must be vacated as a clear excess of the arbitrator's powers and constitutes a manifest disregard of a court order of which he was well aware."  *Id.*[2]

---

[2] Kershaw PC also summarily asserts at the end of this argument section that "[l]etting the Final Award stand would, without question, open an unprecedented avenue for creditors seeking to avoid the protections of bankruptcy law."  Aplt. Br. at 13.  This statement appears to relate to the third issue listed in the "Statement of Issues," which posits that an affirmance of "the imposition of *in personam* liability on a business debt [would] open the floodgates for parties seeking to circumvent debtor protection under principals [sic] of corporate separateness and bankruptcy law[.]"  *Id.* at 2.  This policy argument regarding the bankruptcy court order, however, is waived.  First, a conclusory, unsupported statement in a brief does not

(continued)

We disagree with Kershaw PC. The district court correctly held that the arbitrator's damages award did not violate the bankruptcy court's order and therefore did not exceed his authority. Further, to the extent the manifest disregard exception may still be viable, the arbitrator's decision did not display manifest disregard of the bankruptcy court's lift-stay order.

Kershaw PC's position rests on a faulty premise. Although the arbitrator found that Kershaw PC retained KSS's assets and eventually transferred them to KSS-New York, that factual finding was not inconsistent with the arbitrator's determination that he could award damages for the value of the undistributed capital account. Spangler PC sought to recover a sum of money, not the specific dollars Kershaw PC deposited into the accounts of KSS-New York. Given that money is fungible, it is irrelevant that Kershaw PC placed the money it took from KSS into KSS-New York. It could have spent the money in a myriad of ways. Whatever Kershaw PC did with the money, however, the liability for the undistributed capital account remained with it, not with any later recipient of those exact funds.

preserve an issue for this court's consideration. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274-75 (10th Cir. 2011). Second, it is not apparent that Kershaw PC ever raised this policy argument in the district court, and it fails to seek plain-error review in this court. "[E]ven if [the appellant's] arguments were merely forfeited before the *district court*, [its] failure to explain in [its] opening appellate brief . . . how they survive the plain error standard waives the arguments in *this* court." *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010); *see also ARW Expl. Corp.*, 45 F.3d at 1463 ("Failure to raise an argument to the district court in support of vacating . . . an arbitrator's award precludes raising the argument on appeal.").

Unlike money, however, KSS's intangible assets are not fungible. At the time of the arbitration award, KSS-New York, the bankrupt entity, had possession of those assets. In light of the bankruptcy court's jurisdiction over KSS-New York and the limitations in the lift-stay order, the arbitrator appropriately refrained from awarding the intangible assets, or any portion of them, to Spangler PC. Far from illustrating how the arbitrator exceeded his authority, the differential treatment of the capital account and the intangible assets indicate that the arbitrator paid close attention to the limits of his authority.

Finally, assuming (without deciding) that the "manifest disregard" exception remains available, that ground "[r]equir[es] more than error or misunderstanding of the law"; "a finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it." *Bowen*, 254 F.3d at 932; *see also ARW Expl. Corp.*, 45 F.3d at 1463 (characterizing the "manifest disregard" standard as "willful inattentiveness to the governing law" (internal quotation marks omitted)). For the same reasons that the arbitrator did not clearly exceed his authority in awarding the value of the capital account, he did not act in manifest disregard of the bankruptcy court's lift-stay order.

## 2. **Disregard of the Missouri Court's Order**

Kershaw PC's next argument rests on the Missouri state court's order requiring arbitration for Counts I, III, and IV, but retaining jurisdiction over Counts II, V, and VI. In district court, Kershaw PC asserted that the arbitrator's damages assessment violated the order compelling arbitration because the arbitrator

improperly included as "revenue" amounts that actually were "compensation," which was the subject of Count II and which the Missouri court had held exempt from the arbitration provision. The district court held that this argument challenged the arbitrator's interpretation of the term "compensation" and thus was insufficient to vacate the decision.

Before this court, Kershaw PC argues that "[b]y including 'accounts receivable' and 'work in progress' in the calculation of 'revenue,' the arbitrator changed the meaning of these ordinary terms to mean 'revenue.' . . . At some point 'interpretation' goes too far and becomes factual revision instead of interpretation." Aplt. Br. at 16.

We agree with the district court that Kershaw PC's argument impermissibly attempts to challenge the arbitrator's legal conclusions and factual findings. Kershaw PC identifies no authority establishing that review of alleged error is appropriate in these circumstances. To the contrary, the Supreme Court has made it clear that it is not the district court's function to decide whether the arbitrator was right or wrong. "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers*, 484 U.S. at 36. "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans*, 133 S. Ct. at 2068 (internal quotation marks omitted). In short, in asserting that the arbitrator wrongly

interpreted terms such as "revenue" and "compensation," Kershaw PC argues "nothing more than [an] alleged error[] of law [that] need not, and should not, be considered at length." *ARW Expl. Corp.*, 45 F.3d at 1463 (rejecting "argument that the arbitrator incorrectly concluded that the joint venture interests were 'securities' within the meaning of the federal securities acts").

Focusing on "the sole question for us," which "is whether the arbitrator (even arguably) interpreted the parties' contract," *Oxford Health Plans*, 133 S. Ct. at 2068, we conclude the arbitrator was at least arguably interpreting the Operating Agreement, particularly Article Three (capital, distributions, and allocation of profit), Article Four (rights and obligations upon dissolution or withdrawal of a member) and Schedule A (capital contributions and allocation of revenue). The district court therefore did not err in affording deference to and confirming the arbitrator's decision.

3. **Disregard of Missouri Statute**

Kershaw PC's final argument concerns the arbitrator's decision to omit a portion of a Missouri statute in a quotation. It argued that the omission shows a manifest disregard of the law. The district court held that Kershaw PC had not presented any evidence that the omission was willful, and even if it was, the statute pertained only to an alternative finding.

Before this court, Kershaw PC argues that the district court erred in concluding that it was required to present some evidence beyond the omission itself to establish willful inattentiveness. It suggests that "it is, in fact, fair to assume that when an

- 13 -

arbitrator omits a section of quotation in an opinion [that] he has written, that the omission was willful and intentional." Aplt. Br. at 19. It acknowledges that the arbitrator's discussion was an alternative finding, and thus even a favorable ruling would be insufficient to overturn the arbitral decision. But it urges this court to address the issue because "this case might be subject to a second arbitration if the Final Award is vacated, together with the fact that other parties and arbitrators would benefit from a ruling on the point." *Id.*[3]

Again assuming (without deciding) that the "manifest disregard" exception remains available, we decline to decide this issue. Even a favorable ruling would not require reversal of the district court's judgment. The arbitrator discussed the statute in the alternative, and that alternative holding is not applicable because the primary holding remains undisturbed. Kershaw PC effectively asks this court for an advisory opinion, which we are not authorized to do under Article III of the Constitution. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." (internal quotation marks omitted)); *Pub. Serv. Co. of Colo. v. U.S. EPA*, 225 F.3d 1144, 1148 n.4 (10th Cir. 2000) ("This court would violate Article III's prohibition against advisory opinions were it to [decide a question of law] without ordering some related relief.").

---

[3] To the extent that Kershaw PC's argument advocates for a legal presumption, it is waived. It did not argue for creating a presumption in the district court, and it does not argue for plain-error review in this court. *See McKissick*, 618 F.3d at 1189; *ARW Expl. Corp.*, 45 F.3d at 1463.

## III.  **CONCLUSION**

Kershaw PC has not satisfied the exceptional showing required to upset the finality of arbitration.  We affirm the district court's order confirming the arbitrator's award.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge