FILED
United States Court of Appeals
Tenth Circuit

February 12, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MEMC II, LLC; MIKE MCDANIEL,

    Plaintiffs - Appellants,

v.

CANNON STORAGE SYSTEMS, INC.,

    Defendant - Appellee.

No. 18-6079
(D.C. No. 5:18-CV-00143-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

MEMC II, LLC and Mike McDaniel (collectively, "MEMC") contracted to

have Cannon Storage Systems, Inc. ("Cannon") build a commercial storage facility in

Dallas, Texas. The contract included precise design specifications and stipulated that

any disputes between the parties would be subject to binding arbitration. During

construction, Cannon deviated from the agreed-upon design specifications. In

response, MEMC withheld payments. The parties submitted their dispute to

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

arbitration, each raising claims for breach of contract. The arbitrator found that Cannon had breached by varying from the design specifications, that MEMC had breached by withholding payments, and that MEMC was liable to Cannon for approximately $230,000 in damages.

MEMC applied for relief from the arbitration award in the United States District Court for the Western District of Oklahoma. It argued that Cannon's deviation from the design specifications constituted material breach and thus excused MEMC from its payment obligations under the contract. Accordingly, MEMC requested that the court confirm the arbitrator's finding of Cannon's breach and vacate the award of damages to Cannon. The district court denied MEMC's application, and MEMC timely appealed. Exercising jurisdiction under 28 U.S.C. §1291, we affirm.

## I. BACKGROUND

### A. *The Contract*

On June 17, 2016, MEMC and Cannon entered into a construction industry "Standard Form of Agreement Between Owner and Contractor" ("Contract") obligating Cannon to build a commercial storage facility in Dallas, Texas. The Contract incorporated American Institute of Architects ("AIA") Document A201-2007, which provided general terms about insurance, tax liabilities, and other miscellaneous topics. The Contract also listed express performance standards and mandated Cannon's compliance with a detailed set of design specifications. In

2

addition, the Contract specified payment terms and provided that MEMC would pay Cannon in installments on the 15th day of each month.

The Contract also contained a section called "Binding Dispute Resolution," which mandated arbitration for any contractual disputes subject to but not resolved by mediation. Specifically, the Contract incorporated Section 15.4 of AIA Document A201-2007, which reads:

> If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. . . . The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

*Id.* at 69.

The parties agreed that Texas law would govern any contractual dispute. They also agreed that "[p]ending final resolution of a claim, Cannon shall proceed diligently with performance of the contract and [MEMC] shall continue to make payments in accordance with payment terms." Aplt. App. at 25.

## B. *The Dispute*

After starting construction, Cannon decided that the plans specified in the Contract were "inadequate." Aplt. App. at 188. Accordingly, Cannon hired a new engineer and changed the structural plans. When MEMC learned of the changes, it refused to make further payments, arguing that Cannon had breached the Contract by

3

deviating from the design specifications. Cannon continued construction without payment for nearly five months. On December 14, 2016, MEMC sent Cannon a demand letter describing the perceived breach and warning that it planned to "proceed with initiating the claim process." *Id.* at 72. The letter yielded no results, and Cannon eventually submitted the dispute to arbitration.

## C. *Arbitration*

Cannon brought arbitration claims for breach of contract based on MEMC's nonpayment. MEMC responded with an affirmative defense, arguing that Cannon's departure from the design specifications was a material breach that discharged MEMC's payment obligations. MEMC also counter-claimed for breach of contract, arguing that "Cannon failed to use the approved plans and specifications and did not complete the construction in accordance with approved plans and specifications." *Id.* at 76.

The arbitrator issued a decision on January 12, 2018. She found that MEMC breached the Contract by refusing to pay Cannon, and that Cannon breached the contract by failing to construct the storage facility according to the agreed-upon specifications. For both findings of breach, the arbitrator cited *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432 (Tex. 2017) ("*Cimco*"), which outlines the factors that Texas courts use to assess materiality.

4

Because she found that MEMC breached by withholding payments, the arbitrator awarded Cannon $143,608.82 owed under the Contract.[1] She also noted that although "[MEMC] established that Cannon breached the contract by not getting owner approval for several changes to the structural plans, evidence of the cost to remediate the work related to [Cannon's design] changes was insufficient." *Id.* at 173 n.3. Accordingly, she found that MEMC could "recover nothing from Cannon." *Id.* at 173.

## D. *District Court Proceedings*

On February 13, 2018, MEMC filed an application for relief regarding the arbitration award in the United States District Court for the Western District of Oklahoma. MEMC said that under Texas law, "a failure by a contracting party to comply with expressly defined performance metrics . . . *categorically* operates as a 'material' breach." *Id.* at 7. MEMC further argued that "[w]hen one party to a contract materially breaches the contract, the non-breaching party is discharged or excused from further performance of its duties." *Id.* at 8 (citing *Mustang Pipeline Co., Inc. v. Denver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004)).

Because the arbitrator found that Cannon deviated from express "performance metrics,"[2] MEMC contended that the arbitration decision operated as a finding of

---

[1] The arbitrator also awarded Cannon $28,811.68 in interest, judicial foreclosure of its mechanic liens, $49,016.89 in attorney fees, and $6,914.50 in expert witness fees.

[2] MEMC has used this term throughout the matter. *See, e.g.*, Aplt. Br. at 3, 4, 10.

material breach. MEMC thus claimed that the arbitrator should not have awarded damages. It argued that, because Cannon "materially breached the contract first," MEMC was excused from, and could not be held liable for, its payment obligations under the Contract. *Id.* at 11. MEMC asked the district court to vacate the damages award but "enforce" the arbitrator's finding that Cannon had breached the Contract. *Id.* at 7.

The district court denied MEMC's application. It explained "there exists [a] strong presumption favoring the validation of [arbitration] award[s]." *Id.* at 214 (quotations omitted). It further explained that vacatur is appropriate only in rare circumstances, such as "where the arbitrators exceeded their powers." *Id.* (citing 9 U.S.C. § 10(a)(4)). The court noted that under Texas law, materiality is a question of fact that is assessed using a factor-based analysis. Because the arbitrator cited *Cimco*, which outlines this factor-based approach, the district court concluded that she correctly "found that [Cannon's] initial conduct was a breach, not a material breach." *Id.* at 216. The district court therefore held that "the arbitrator's conclusions were well within her purview as the fact finder" and that "the arbitrator was not exceeding her powers . . . by awarding damages." *Id.* at 217.

## II. DISCUSSION

Under the Federal Arbitration Act ("FAA"), courts "may vacate an arbitrator's decision only in very unusual circumstances." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1082 (10th Cir. 2017) (quotations omitted). Section 10(a) of the FAA identifies four situations where vacatur is appropriate. 9 U.S.C.

6

§ 10(a)(4). Here, we consider whether the arbitrator's decision exceeded her legal authority under 9 U.S.C. § 10(a)(4).

Below, we present the highly deferential standard generally used for judicial review of arbitral decisions. We then describe the FAA rules governing vacatur of arbitration awards, and we discuss one rare example in which a circuit court vacated an arbitration award after finding that the arbitrators exceeded their authority under 9 U.S.C. § 10(a)(4). Applying this legal background to the present case, we conclude that the arbitrator did not exceed her authority in issuing an award for Cannon, and we affirm the district court's denial of MEMC's application for relief.

A. *Legal Background*

1. **Standard of Review**[3]

When analyzing a challenge to the district court's confirmation of an arbitration award, "we review legal questions de novo and factual findings for clear error." *CEEG (Shanghai) Solar Sci. & Tech. Co. v. LUMOS LLC*, 829 F.3d 1201, 1205 (10th Cir. 2016). We "do not owe deference to the district court's legal conclusions," but we "afford maximum deference to the arbitrator's decisions." *Id.* (quotations omitted). "Our task is to assess whether the district court correctly

---

[3] In articulating the standard of review for challenges to arbitration decisions, this court has relied on cases arising under both the FAA, 9 U.S.C. § 10, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See, e.g.*, *THI*, 864 F.3d at 1083 (citing FAA case *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013) and also citing LMRA cases *San Juan Coal Co. v. Int'l Union of Operating Eng'rs, Local 953*, 672 F.3d 1198 (10th Cir. 2012) and *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987) ("*Misco*")).

followed the restrictive standard that governs judicial review of an arbitrator's award." *THI*, 864 F.3d at 1083 (10th Cir. 2017).

"[T]he standard of review of arbitral awards is *among the narrowest known to law*." *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (emphasis added) (quotations omitted). Courts "give extreme deference to the determinations of the [arbitrator]." *Id.* Courts also "exercis[e] great caution," *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982), and vacate arbitration awards "only in extraordinary circumstances." *San Juan Coal Co. v. Int'l Union of Operating Eng'rs, Local 953*, 672 F.3d 1198, 1201 (10th Cir. 2012).

The Supreme Court has said that such extraordinary circumstances exist only when the arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quotations omitted). "[E]rrors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Dish Network LLC v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018). Rather, if an arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority," the arbitral award should be upheld. *Major League Baseball Players Ass'n*, 532 U.S. at 509 (quotations omitted).

In practice, this deferential standard means that courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award

8

rests on errors of fact or on misinterpretation of the contract." *CEEG*, 829 F.3d at 1206 (quotations omitted). Instead, a court's "sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "As long as the arbitrator [was] even arguably construing or applying the contract," *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 30 (1987) ("*Misco*"), courts remain "highly deferential" to the arbitrator's decisions. *THI*, 864 F.3d at 1084.

## 2. **Vacating Arbitration Awards Under the FAA**

Section 10(a) of the Federal Arbitration Act provides four statutory grounds for vacating arbitration awards:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

MEMC seeks relief from the arbitrator's award under 9 U.S.C. § 10(a)(4). As described above, federal courts strongly defer to an arbitrator's decisions. Because

9

of this, "a party seeking relief under § 10(a)(4) bears a heavy burden." *Oxford Health Plans LLC*, 569 U.S. at 564 (quotations omitted). "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough" to warrant vacatur under § 10(a)(4). *Id.* at 572. "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* at 569 (quoting *E. Associated Coal Corp. v. Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).

Thus, "in considering whether the arbitrator exceeded [her] powers, we consider one question: whether the arbitrator arguably interpreted the parties' contract, regardless of whether that interpretation was correct." *THI*, 864 F.3d at 1084. If the court finds that the arbitrator "strayed from his delegated task of interpreting a contract," vacatur under § 10(a)(4) is appropriate. *Id.* at 1088 (citing *Oxford Health Plans LLC*, 569 U.S. at 572). If, however, the arbitrator's decision "has *any* contractual basis, it should not be overturned under the deferential standard of review afforded to arbitration awards." *Id.* (quotations omitted); *see also San Juan Coal Co.*, 672 F.3d at 1201.

Given this highly deferential approach, courts do not often find that an arbitrator "exceeded his powers" under § 10(a)(4). In cases involving § 10(a)(4) challenges, this circuit has generally affirmed the arbitration award. *See, e.g.*, *THI*, 864 F.3d 1080 at 1088 (affirming an arbitrator's award of costs and interests because the award "[found] support in the terms of the Arbitration Agreement" and was a

10

"defensible construction[] of the agreement"); *San Juan Coal Co.*, 672 F.3d at 1201 (reversing a district court's vacatur of an arbitration award because the award "had at least some foundation in the text of the controlling agreements"); *Brown*, 220 F.3d at 1183 (reversing a district court's vacatur of an arbitration award that, though possibly erroneous, "was based on the contract").

Tenth Circuit case law thus provides few examples that might warrant vacatur of an arbitration award under § 10(a)(4),[4] but one example from the Ninth Circuit is instructive. In *Coast Trading Co., Inc. v. Pac. Molasses Co.*, 681 F.2d 1195 (9th Cir. 1982), a buyer sued after a seller cancelled a contract for a bulk sale of peas. The arbitrators found that the buyer improperly changed shipping instructions. *Id.* at 1197. The arbitrators also found that the seller was negligent in communicating with the buyer about the problem with the shipping instructions. Rather than award monetary relief, however, the arbitrators extended the contract and designated a new delivery date well beyond the date specified in the original agreement. *Id.*

The district court vacated the arbitration award, holding that it went "beyond the scope of the submission and [was] an arbitrary and irrational finding." *Id.* at 1197. On appeal, the Ninth Circuit affirmed. The court acknowledged that it owed significant deference to the arbitrator's decision, and it noted that arbitration decisions generally "will not be set aside by a court for error either in law or fact." *Id.* at 1198 (quotations omitted). But because the arbitrators' decision exceeded the

---

[4] MEMC has not cited *any* case where an arbitrator's reading of the law was deemed so wayward as to warrant vacatur under 9 U.S.C. §10(a)(4).

11

scope of the contract and did not "draw[] its essence from the agreement," the court

deemed the award invalid under 9 U.S.C. § 10(a)(4). *Id.* at 1197. It held:

> Because the inherent nature of arbitration as a method of
> dispute resolution involves the agreement of the parties,
> we vacate this arbitration award as being contrary to
> remedies provided in the contract and as beyond the
> authority of the arbitrators under the submission. We
> emphasize it is not for the courts to examine the merits of
> an award, but the award will not be shielded from judicial
> scrutiny intended to insure [sic] that the award is grounded
> on the agreement of the parties and the issues they present
> for resolution.

*Id.* at 1198.

*Coast Trading Co.* is thus a rare example of an award vacated under 9 U.S.C.

§ 10(a)(4). The Ninth Circuit did not vacate the award because it was legally or

factually unsound—in fact, the court noted that it generally upholds awards even if

the "arbitrators' view of the law [was] open to serious question." *Id.* But because

the arbitrators crafted a remedy that was not contemplated in the contract, the court

determined that the arbitration award "exceeded the authority given them by the

consent of the parties" and warranted vacatur under § 10(a)(4). *Id.*

## B. *Analysis*

MEMC argues that the arbitrator exceeded her authority under 9 U.S.C.

§ 10(a)(4) because her ruling was "manifestly at odds with Texas law." Aplt. Br. at

11.[5] According to MEMC, Cannon's breach—the failure to adhere to explicit "strict

---

[5] MEMC argues that under Texas law, any deviation from a specified "performance metric" is necessarily a material breach. Aplt. Br. at 11. Because our deferential approach does not second guess the soundness of an arbitrator's

12

performance[] metrics"—was "material" as a matter of law. Aplt. Br. at 11-12, 15-16. MEMC contends that it was therefore excused from its payment obligations under the Contract. It further argues that the arbitrator exceeded her authority in awarding damages to Cannon and requests that we vacate the award in favor of Cannon, enforce the arbitrator's finding of Cannon's breach, and designate MEMC as the prevailing party so that it may seek fees and costs upon remand.

As discussed above, we give "extreme deference" to an arbitrator's determinations. *Brown*, 220 F.3d at 1182. Accordingly, we vacate arbitral awards only in narrow, rare circumstances—when an arbitrator "exceed[s] [her] powers," 9 U.S.C. § 10(a)(4), or "dispenses [her] own brand of industrial justice." *Major League Baseball Player's Ass'n*, 532 U.S. 509.

Here, the arbitrator held a three-day arbitration hearing, reviewed nearly 100 exhibits, and heard arguments and evidence from both parties. She also cited the governing Texas law on material breach and analyzed the facts using the cases the parties

---

interpretation of the contract or the law, we do not address this issue. But even if we did consider MEMC's Texas law argument, our holding would remain the same. The Texas Supreme Court has stated that "materiality is an issue to be determined by the trier of facts" and should be assessed using a series of factors from the Restatement (Second) of Contracts. *Cimco*, 518 S.W.3d at 436 (Tex. 2017) (quotations omitted); *see also Mustang Pipeline Co.*, 134 S.W.3d at 199 (citing Restatement (Second) of Contracts § 241 (Am. Law Inst. 1981)). Texas courts also have specified that "materiality may be decided as a matter of law only if reasonable jurors could reach only one verdict," *Cimco*, 518 S.W.3d at 436, which is not the case here.

Given this precedent, MEMC's argument is without merit. We thus summarily deny MEMC's motion to certify the question of whether disregard of "an express, contractual performance metric" constitutes material breach as a matter of Texas state law. Aplt. Opposed Mot. Certify Questions State Law at 5. We also deny as moot MEMC's request for leave to file a reply in support of that motion.

13

cited in their briefs (including *Cimco*). Based on her assessment of the facts, the Contract, and the relevant law, the arbitrator found that MEMC breached by withholding the payments it owed under the Contract. She also found that Cannon breached the Contract by deviating from the design specifications.

By citing *Cimco* in her decision, the arbitrator demonstrated her awareness of Texas law governing material breach. And as the district court noted, she correctly "relied on [the *Cimco*] factors . . . and did not find conclusive evidence that a material breach occurred by [Cannon]." *Id.* at 216. Because she determined that Cannon's breach was not material, and because MEMC did not sufficiently establish evidence of damages, the arbitrator ordered MEMC to complete its payments and did not allow it to recover damages.

We are limited to assessing whether the arbitrator interpreted the Contract and do not consider the substance of her legal or factual conclusions. *See Oxford Health Plans LLC*, 569 U.S. at 569; *Misco*, 484 U.S. at 38. Nothing in the arbitrator's decision suggests that she did not interpret the Contract. In fact, the award indicates just the opposite. The arbitrator considered the respective clauses using relevant case law, weighed the evidence, and decided that, even though Cannon breached, its breach did not excuse MEMC from payment obligations. *See* Aplt. App. at 172-73, 172 n.1. Unlike in *Coast Trading Co.*, where the arbitrators created a remedy not contemplated by either party, this arbitrator ordered MEMC to pay the money it owed under the agreement. Her decision was thus comparable to awards we have upheld in other cases. It had "at least some foundation in the text of the controlling agreements" and was based on a

14

"defensible construction[] of the [Contract]." *San Juan Coal Co.*, 672 F.3d at 1201; *see also THI*, 864 F.3d at 1088 (upholding an arbitral award that had "'*any*' contractual basis").

Because the arbitrator interpreted the Contract and applied the law of the jurisdiction selected by the parties, she did not "dispense[] [her] own brand of industrial justice" or exceed her authority under the agreement. *Major League Baseball Players Ass'n*, 532 U.S. at 509 (quotations omitted). Vacatur is not appropriate under 9 U.S.C. § 10(a)(4).

## III.  CONCLUSION

Applying one of the narrowest standards of review known to law, we hold that the arbitrator did not exceed her authority when she issued an arbitration award in favor of Cannon. Accordingly, we affirm the district court's denial of MEMC's motion.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

15